### DYE v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. October 14, 1919.)

#### No. 1711.

1. CARRIERS ⬦⇒38—INDICTMENT FOR DISCRIMINATION NEED NOT DESCRIBE DEVICE USED.

In an indictment for violation of the provision of Hepburn Act (Comp. St. § 8597), making it unlawful to grant any rebate or concession whereby, "by any device whatever," any advantage is given or discrimination is practiced in favor of a shipper, it is not necessary to describe the device used.

2. CARRIERS ⬦⇒38—EVIDENCE SUFFICIENT TO SUSTAIN CONVICTION FOR DISCRIMINATION, IN VIOLATION OF INTERSTATE COMMERCE ACT.

Evidence held to sustain a conviction of defendant, who as agent for a railroad company was in charge of distribution of cars between coal mines, for discriminating in favor of one mine, although it also showed that the discrimination was primarily for his own personal profit, and was without the request or knowledge of the mine owner.

3. CRIMINAL LAW ⬦⇒1173(4)—QUALIFICATION OF REQUESTED INSTRUCTION HARMLESS.

Qualification of an instruction, requested by defendant, held not prejudicial error, in view of the evidence.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Criminal prosecution by the United States against I. K. Dye. Judgment of conviction, and defendant brings error. Affirmed.

H. G. Kump, of Elkins, W. Va. (Conley & Johnson and Lilly & Lilly, all of Charleston, W. Va., on the brief), for plaintiff in error

J. Stanley Payne, Sp. Asst. U. S. Atty., of Washington, D. C. (Lon H. Kelly, U. S. Atty., of Gassaway, W. Va., on the brief), for the United States.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

WOODS, Circuit Judge. The defendant was convicted on the first and fifth counts of an indictment charging violation of the following provision of the Elkins Act, as amended by the Hepburn Act (Comp. St. § 8597):

" * * * And it shall be unlawful for any person, persons, or corporation to offer, grant, or give, or to solicit, accept, or receive any rebate, concession, or discrimination in respect to the transportation of any property in interstate or

---

⬦⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

foreign commerce by any common carrier subject to said act to regulate commerce and the acts amendatory thereof whereby any such property shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by such carrier, as is required by said act to regulate commerce and the acts amendatory thereof, or whereby any other advantage is given or discrimination is practiced. Every person or corporation, whether carrier or shipper, who shall knowingly offer, grant, or give, or solicit, accept, or receive any such rebates, concession, or discrimination shall be deemed guilty of a misdemeanor." 32 Stat. 847; 34 Stat. 584.

On the line of the Coal & Coke Railway Company there are a number of West Virginia coal mines dependent on that company for the transportation of their product to customers in West Virginia and other states. In 1917 there was a car shortage. The Interstate Commerce Commission made a rule for the equitable pro rata distribution of available cars among the mines according to their output.

The railway company made a rating of the mines, showing how many cars each was entitled to receive according to this rule, without discrimination against or in favor of any mine or shipper or consignee. Governed by this rating, an official or employé of the railway made a daily distribution of the available cars. Cars sent to the mines to be loaded with coal for railroad fuel were not charged against the mines on their allotment, but the remaining cars to be used for commercial coal—coal sold to the trade—were allotted, and notice was given to each mine of the per centum of the cars called for by its rating that could be furnished. Thus the number of cars available to each mine for commercial coal was ascertained. Since the price of commercial coal was higher than fuel coal, it was to the advantage of each mine to get as many cars for commercial coal as possible.

The charge of the first count of the indictment is that the defendant was an agent and employé of the Coal & Coke Railway Company and had charge of and supervision over the allotment and distribution of cars to the several mines served by the railway company according to their rating; that on April 18, 1917, when the Dorfee mine was entitled to receive only 5 cars, 70 per cent. of its rating, for commercial coal, the defendant by means of a device, knowingly allotted, distributed, and placed at the Dorfee mine 10 cars which were to be loaded with commercial coal, and which were used for the shipment of commercial coal; that on the same day the other mines mentioned in the indictment standing on the same footing were allotted and received only 70 per cent. of their rating; that this transaction of the defendant was an unlawful discrimination.

The fifth count of the indictment makes a similar charge of discrimination in favor of the Turner mine and against other mines mentioned.

There was no merit in the motion to quash the indictment. The allegation is directly made that the mines discriminated against asked for all the cars for commercial coal indicated by their rating and were furnished only 70 per cent., while the Dorfee mine was furnished much more than the number called for by the rating, and it necessarily follows that this was on its face a substantial discrimination.

[1] It was not necessary to describe the device by which the discrimination was effected. In denouncing discrimination "by any de-

vice" the statute does not mean that a device is necessary to the offense, but that if any device is used the courts are to look through it to the real nature of the transaction. Armour Packing Co. v. United States, 209 U. S. 56, 85, 28 Sup. Ct. 428, 52 L. Ed. 681. For the same reason there was no abuse of discretion in refusing the motion for a bill of particulars as to the nature of the device. Besides, the letters of the defendant and other evidence show that the defendant could not have failed to know the transactions to which the indictment related.

The position that the defendant was tried without having pleaded to the indictment is based on a mistake of fact. The record shows that the defendant did formally enter his plea of not guilty. He then moved to be allowed to withdraw his plea of not guilty and demand a bill of particulars. The motion was refused in its entirety, and hence the plea stood as originally made.

The errors assigned in the charge and in the admission and rejection of testimony are to be considered in the light of the amendment of 1919 of section 269 of Judicial Code (Comp. St. Ann. Supp. 1919, § 1246):

"On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

[2] The facts alleged in counts 1 and 5 of the indictment were proved beyond all controversy. But by a motion for a directed verdict of acquittal the defendant asked the trial court to hold that these facts did not constitute an unlawful discrimination as charged in favor of the Dorfee mine and against Buchanon River Coal & Coke Company and other mining companies mentioned, because the government proved additional facts showing that Dye himself, and not the Dorfee mine, got the benefit of the unequal distribution of the cars. These additional facts were that the Dorfee mine in good faith received and loaded the cars as fuel cars in fulfillment of a contract to sell Dye himself fuel coal, and by his direction consigned them to the Pennsylvania Railroad Company; that at Elkins Dye had the cars reconsigned to General Chemical Company at Marcus Hook, Pa., to which he had sold the coal as commercial coal at a price about $1.10 a ton above the price paid for it as fuel coal to the Dorfee mine. The argument is that the discrimination was therefore in favor of Dye himself and not the Dorfee mine against other mines mentioned.

The fallacy seems evident. Taking the cars from the supply available for distribution among the mines for commercial coal diminished the allotment of the Buchanon Company and other mining companies to their disadvantage. It is true that Dye received the main benefit of this wrong, since he sold the coal as commercial coal when he had by deceit bought it at a lower price as fuel coal. But the Dorfee mine also received benefit from the wrong, though unwittingly, for it was enabled to get cars and keep its mines in operation, and sell and ship the coal for which the cars were used, presumably at a profit, although sold at

the price of fuel coal. Dye's appropriation of the chief benefit supplied the motive. His pretense that the cars were for fuel coal, and his written denial to a complaining shipper that such transactions had taken place, made evident his knowledge that he was violating the law. Surely the defendant could not be relieved of the guilt of this discrimination in favor of the Dorfee mine, on the ground of variance between the charge and the evidence, by proof that he clandestinely appropriated to himself the main profit of the discrimination. On the contrary, the inference that he discriminated for his own benefit necessarily implied that there had been discrimination in favor of the Dorfee mine by sending it an excess of cars as a condition precedent to his reaping the principal fruit of the discrimination.

But in addition to that proof of discrimination against other mines or shippers as charged in the indictment would make out the offense, even if the preference to the Dorfee mine was used only as a means of carrying out the unlawful scheme against the other mines without actual benefit to the Dorfee mine. The purpose of Congress was to cut up by the roots every form of discrimination, favoritism, and inequality. Louisville & Nashville R. R. Co. v. Mottley, 219 U. S. 467, 478, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; New Haven R. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 391, 26 Sup. Ct. 272, 50 L. Ed. 515; Armour Packing Co. v. United States, 209 U. S. 56, 72, 28 Sup. Ct. 428, 52 L. Ed. 681; Louisville & Nashville R. R. Co. v. Mottley, 219 U. S. 487, 496, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; United States v. Union Stock Yard, 226 U. S. 286, 307, 33 Sup. Ct. 83, 57 L. Ed. 226.

It was further contended in support of the motion to direct a verdict of acquittal that the defendant's acts alleged to be criminal were mere administrative irregularities subject to investigation by the Interstate Commerce Commission. The rule under which the cars were to be distributed to the several mines was fair and equitable. The charge and the proof were that the defendant intentionally misapplied this rule so as to effect the illegal discrimination. This was not an administrative act, but a violation of the statute. Pennsylvania Railroad Co. v. Puritan Coal Co., 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867.

There is nothing in the point that at the time of the offense Dye was not the general manager, the officer who usually had charge of the distribution of cars. He was proved to be the agent of the railway company who actually directed the distribution.

[3] The defendant requested the following instruction:

"The jury are instructed that the offense of 'discrimination,' as charged in this indictment, is the granting of a preference to a shipper that is not granted to all shippers in substantially the same class, whereby the shipper receiving the same enjoys an unjust advantage over such other shippers, and if the jury believes from the evidence that the fuel coal contracts alleged to have been secured by the defendant and accepted by certain coal mines on the Coal & Coke Railway, and the securing of foreign empty cars for such coal, did not work an injury or injustice to, or discrimination against, the owner of any coal mine served by said railroad, then you should find that the placing of said cars did not constitute a discrimination as charged in the indictment."

After reading this request to the jury the District Judge said:

"I think, gentlemen, that while I indicated I would give that instruction, I can only give it in connection with an explanation, because the question is not necessarily as to whether a mine was favored or discriminated against. The beginning of the instruction illustrates what I want to say; it is 'the granting of a preference to a shipper'; it need not necessarily be in favor of or against a mine, and the contention of the government in this case was that the defendant himself was a shipper, and that the discrimination favored him. Of course, that question is one to be determined under all the evidence in the case; but it is not necessary that a specific mine should be discriminated in favor of or against, if what was done discriminated in favor of a shipper to the detriment of other shippers or other mines."

Error is charged in refusing to give this request as presented, and in qualifying it by the language quoted. The ground of the assignment is that the indictment charged discrimination against particular coal companies therein mentioned in favor of the Dorfee mine, whereas the instruction given allowed the jury to convict if they reached the conclusion that the defendant had discriminated against the mines mentioned in his own behalf. Technically, the assignment is well taken; but there was no evidence upon which the distinction contended for by appellant could be founded.

The discrimination proved in favor of Dye himself, and against the particular coal companies mentioned, was linked by the proof inseparably with discrimination in favor of the Dorfee mine. They were parts of one transaction. The same evidence proved both offenses with equal certainty. For this reason the error in charging that defendant might be convicted if he had discriminated in his own favor was unsubstantial.

The evidence showing discrimination in intrastate shipments and in shipments other than those charged in the indictment was admissible, because it tended to prove a deliberate intent, and thus disprove defendant's claim that the discrimination charged was given only temporarily, for convenience of administration, with the intent to correct it.

There was no error in excluding an order of Morrow, superintendent of transportation, directing that coal shipped as fuel coal and reconsigned as commercial coal should be charged against the mine "from which the car originated." The proof shows conclusively that the defendant, not only had no purpose to charge the cars back to the Dorfee mine, but that he had placed himself in a position where he could not do so.

The official car distribution sheets of the railroad were admissible to prove, not that the cars had been actually used as commercial cars by defendant's order, but that they were not so charged in the official distribution.

It is not necessary to pass on the admissibility of the wheel reports made by conductors showing delivery of cars, for the reason that the fully verified mine reports showed the delivery.

The other requests to charge refused by the court were not argued in the brief and require no discussion, since they were covered by the general charge, or are clearly unsound, or are not responsive to the issues.

Even if there had been distinct errors in the admission or rejection

of testimony, or in the charge, they would not justify reversal. The guilt of the defendant was so conclusively proved that his acquittal would have been a clear miscarriage of justice.

Affirmed.