### SNEIERSON v. UNITED STATES.*

(Circuit Court of Appeals, Fourth Circuit. February 18, 1920.)

### No. 1712.

1. **Indictment and information ⊗⟹128—Indictment for bribery not invalid, because describing officer differently in different counts.**

An indictment, under Criminal Code, § 39 (Comp. St. § 10203), for bribery of a person acting in an official function for the United States, objected to as duplicitous, *held* not bad because it stated the official character or function of the person bribed differently in different counts, charging the same offense in different ways.

2. **Bribery ⊗⟹6(1)—Indictment for bribing officer need not allege ownership of property involved.**

An indictment under Criminal Code, § 39 (Comp. St. § 10203), charging defendant with giving a bribe to a person acting in an official function for the United States, to influence his action in his official capacity in the sale of certain bags, need not allege that the bags were the property of the United States.

3. **Bribery ⊗⟹10—Evidence held competent to show official character of person bribed.**

On trial of defendant for bribing of a person acting in an official capacity for the United States, testimony of such person as to his official duties, and original letters showing his appointment and instructions, *held* properly admitted to establish the official character in which he was acting.

4. **Criminal law ⊗⟹419, 420(12) — Witnesses ⊗⟹259 — Private stenographer's notes not admissible, but may be used as aid to memory.**

Notes of a private stenographer are inadmissible in evidence as hearsay, but where the stenographer is a witness may properly be used by him as an aid to memory.

5. **Criminal law ⊗⟹1186(4)—Admission of evidence held not ground for reversal.**

Admission in evidence of stenographer's notes in a criminal case *held* harmless error, not affecting substantial rights of defendant, nor warranting a reversal, under amendment to Judicial Code, § 269, of February 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), when other evidence conclusively established defendant's guilt.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; Charles A. Woods, Judge.

Criminal prosecution by the United States against Samuel L. Sneierson. Judgment of conviction, and defendant brings error. Affirmed.

Charles L. Abernethy, of New Bern, N. C., and David Stoneman, of Boston, Mass. (William H. Garland, of Boston, Mass., Harry B. Wolf, of Baltimore, Md., and Elijah Adlow, of Roxbury, Mass., on the brief), for plaintiff in error.

Samuel K. Dennis, U. S. Atty., and James A. Latane, Asst. U. S. Atty., both of Baltimore, Md.

⊗⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 252 U. S. —, 40 Sup. Ct. 584, 64 L. Ed. —.

Before PRITCHARD and KNAPP, Circuit Judges, and WADDILL, District Judge.

WADDILL, District Judge. The plaintiff in error, hereinafter called the defendant, was indicted by the grand jury of the district of Maryland on December 19, 1918, for an offense under section 39 of the Penal Code of the United States (Comp. St. § 10203). The indictment contained four counts, and charged, in substance, that the defendant gave $1,000 to one Loyal S. Fox, described in counts 1 and 2 as an officer of the United States, and in counts 3 and 4 as a person acting for the United States in an official function, with intent to influence the decision and action of Fox in respect to a matter pending before him in his official capacity, to wit, the disposal of certain used nitrate of soda bags, for which the defendant had submitted a bid to Fox, who was charged with the duty of obtaining bids for the sale of such bags, and with the further duty of disposing of them to the highest bidder.

The defendant duly appeared and demurred to the indictment, setting forth 10 specifications of objection thereto, all of which, after argument, were overruled by the court. Thereupon the defendant pleaded not guilty, a jury was impaneled, and upon the evidence adduced returned a verdict of guilty. The defendant interposed a motion in arrest of judgment, which was overruled by the court, and judgment entered upon the verdict, and the defendant sentenced to confinement in the Maryland penitentiary for 15 months and the payment of a fine of $1,500. From this action, a writ of error was sued out.

The defendant filed sundry exceptions to the action and rulings of the court in overruling the demurrer, in admitting evidence, to the court's instructions to the jury, its failure to direct a verdict for the defendant, and in overruling the motion in arrest of judgment, which form the basis of the assignments of error set forth in the record. These assignments will now be considered:

[1] First. The grounds of demurrer, in so far as they relate to the first and second counts of the indictment, need not be especially considered, as the verdict was for the defendant, by direction of the court, on said counts. The demurrer raises, among others, the question of the failure to aver that the bags mentioned in the indictment were the property of the United States; that Loyal S. Fox was acting by authority of and for the United States; that he was authorized to receive bids for, and to dispose of or sell, the said bags, either as United States stores inspector, or as "balance of stores clerk in the Ordnance Department at large"; that said indictment was bad for duplicity, in that the official title of Fox was differently described in different counts, as well as his official position and relation to the several matters covered by the indictment; and, further, that the indictment was vague and uncertain, in that, in the several counts thereof, contradictory and conflicting averments were made regarding the title and functions of the same person, to wit, the said Fox, in connection with the transaction, the subject of the said several counts.

It is entirely proper to charge the same offense specified in the indictment against the defendant in different ways in the several counts;

the differences mainly having relation to the official name or title of the person sought to be bribed. The same act of bribery is charged in each count. In the first and second counts, Fox is described as being an officer of the United States; as he was technically not such an officer, a verdict of not guilty was instructed on those two counts. In the third count, he is described as "a certain person who was then and there acting for and on behalf of the United States, in a certain official function, to wit, as United States stores inspector," etc., and in the fourth count as "a certain person who was then and there acting for and on behalf of the United States in a certain official function, to wit, as balance of stores clerk in the Ordnance Department at large." In both the third and fourth counts it is charged that, in his said official relation, he was stationed at the United States ammonia nitrate plant at Perryville, Md., acting under and by virtue of a certain department and office of the government of the United States, to wit, the office of the Chief of Ordnance of the War Department of the United States; that the said Fox was charged in his official position with the duty of obtaining bids for the sale of used nitrate of soda bags at said plant, and with the disposition of the same; and that the defendant, having submitted bids to the said Fox as such official, for the purchase of said bags, when the acceptance or rejection of such bids were pending before said Fox, in his said official capacity, and with the full knowledge on the part of the defendant, he, the defendant, offered the alleged bribe with a view of influencing in his favor the action of said Fox on said bids.

[2] These two counts set out in substantially the language of the act the offenses charged in the indictment, with full averments and amplification in respect to the facts covering the offenses charged, and are in all respects valid and free from legal objection. Nor is the position well taken that it was necessary to aver the title and ownership of the bags, that they were the property of the United States. This is not necessary under the statute under which the prosecution is had. It would have been as much an offense to bribe an officer under the circumstances here, in handling the property of a stranger, passing through government channels, intended for government use, as if it actually belonged to the United States.

Second. The assignments of error regarding the admission and exclusion of testimony will be considered along with the assignments and exceptions to the court's charge, save that assignment No. 5, upon the admissibility of testimony, will be considered separately, after the others have been disposed of.

Assignment of error No. 2 relates to the admission in evidence of three original letters, addressed to the witness Fox, alleged to have been bribed, bearing upon his appointment and official duties, and assignment No. 3, to the admission of certain printed and mimeographed circulars, purporting to show the authority of Fox to exercise the official functions in which he was employed; assignment No. 4 relates to the admission of the paper showing Fox's exoneration of certain charges attempted to be shown against him during his cross-examination as a witness for the government; assignments 6 to 16, inclusive,

seek in various ways to question the correctness of the court's ruling, bearing upon the evidence showing the connection between the United States and the Atlas Powder Company of Wilmington, Del., alleged to have been the government's agent for the operation of its ammonia nitrate plant at Perryville, Md.; and assignments Nos. 17, 18, 19, 20, 21, and 22 relate to the court's rulings in its charge to the jury, the details of which will be hereafter referred to, and assignment No. 23 to the court's overruling defendant's motion in arrest of judgment.

[3] In order intelligently to pass upon the several assignments of error to the court's rulings as set forth, it will be necessary to review briefly the testimony in the case, and thus show the circumstances under which the several rulings were made. The defendant was on trial for the alleged violation of section 39 of the Criminal Code, in that he feloniously gave to one Loyal S. Fox, a person then and there acting for and on behalf of the United States, at the United States ammonia nitrate plant at Perryville, Md., the sum of $1,000, with intent to influence in his favor the decision and action of said Fox in a certain official function which he was then discharging. In the third count, the official function is described as that of United States stores inspector, and in the fourth count as that of balance of stores clerk in the Ordnance Department at large. The government's case is that Fox, as United States stores inspector, in reply to a letter from Sneierson & Bros., East Cambridge, Mass., inquiring if we "had any nitrate of soda bags for sale," referred to him by the Atlas Powder Company as the person who handled those particular transactions, on the 31st of August, 1918, wrote Sneierson & Bros., giving them full information as to the nitrate of soda bags the government had on hand and the proper sample and grade of same. This letter was written on official stationery, headed "War Department, Stores Branch, Finance Section, Office of Chief of Ordnance, Perryville, Md.," and was mailed at Perryville in an official envelope, with the words "Penalty for private use $300," and the card "U. S. Stores Inspector, War Department, Office of Chief of Ordnance, Perryville, Md., Official Business." On the 3d of September, 1918, Sneierson & Bros. wired as follows:

"Referring to nitrate bags, our Mr. Sneierson will be at your city to-morrow, the fourth."

This was addressed to L. S. Fox, care Atlas Powder Co., U. S. Stores Inspector, Perryville, Md. On the next day, the defendant reached Perryville, went into the bag house with said Fox, examined the bags, and upon going outside said he was very anxious to get hold of those bags, and he would like to have Fox fix it so he could get hold of them, and said that nobody could object to making a dollar if they had the chance, and that he would be willing to pay one-half cent for each bag, provided Fox was able to see that he was the successful bidder, and therefore able to purchase the bags. Before making this offer, the defendant inquired of Fox if he had the right to dispose of the bags, which Fox assured him he had. Fox promised the defendant that he would let him know something within a week or 10 days, and the defendant then left. Fox, on the same day, made a detailed report of the matter to his superior officer.

In about 10 days, Sneierson called over the phone, and was again put off for a week, and was subsequently telegraphed to, and on the 18th of September, he wired Fox that he would see him the next morning about 10 o'clock. On the next morning, he phoned Fox from Havre de Grace, saying that he was at the Harford House there, and ready to see him. Fox at once went over to Havre de Grace, met the defendant on the porch of the Harford Hotel, and in reply to defendant's suggestion to go to his room, Fox said that he would rather go to his residence at Port Deposit, to which the defendant assented, and the two proceeded to Fox's residence in an automobile. They went in the parlor on the floor below the room occupied by Fox. After talking over the matter, the defendant was still agreeable to his proposition. He also wanted an option on bags for the year 1919, to which Fox, after some discussion, assented. Thereupon the defendant presented and paid him 50 $20 bills for 200,000 bags at one-half cent per bag, and he was to be paid another $1,000 when a further 200,000 bags had been accumulated. The defendant and Fox thereupon left the house, taking the automobile for Perryville.

Upon reaching Perryville in a short time, the defendant was placed under arrest, and the $1,000 paid Fox was taken from him by Capt. Starke, Chief Intelligence Officer, Bureau of Investigation. The defendant admitted paying Fox the $1,000, and said he gave it to him as a present, and then remarked: "I guess I had better say nothing else." In anticipation of the defendant and Fox going to the parlor of the latter's house, the government officials had placed a stenographer in the room, secreted behind the piano, to take down all that occurred, and, in addition, Chief Intelligence Officer Starke and a private remained in the room above, and sought to hear what took place. The witness Fox testified in detail to what occurred in the room, including the payment of the money. Capt. Starke heard as to the amount of money, but, being in the room above, he could not intelligently catch the conversation. He also testified as to Fox and the defendant going to and leaving the house in an automobile.

The government also introduced William M. Hayes, Chief Clerk to the Field Auditor at Perryville, who testified that he drove the automobile to the Harford House, and carried Fox and the defendant to Port Deposit, and saw them enter Fox's house, where they remained some 15 or 20 minutes, and left, and that he then drove them to the reservation at Perryville. The stenographer, Gilpin, who had been placed behind the piano, testified to two men, neither of whom he could see, coming into the room, and that he took down in shorthand what occurred between them, and he produced a stenographic report of what occurred, written from his original notes within three-quarters of an hour after the same was taken down. He testified he did not know the defendant, but knew Fox's voice. Fox, Charles E. Cole, government disbursing officer at the plant at Perryville, and the Chief Intelligence Officer at the plant, were all present when the defendant was taken into custody, and the $1,000 taken from Fox, and all agree in the statement that the defendant admitted having given the money to Fox, and stated that he intended it as a present. The witness, Starke,

recalled that the defendant said he gave it as a present, in order to be given a preference on contracts.

The foregoing testimony was introduced by the government; no evidence was offered by the defendant, nor did he testify in his own behalf. The exceptions to the action of the lower court, and the assignments of error in respect thereto, must be viewed in the light of the record as made, and, when so considered, it cannot be said that error was committed prejudicial to the defendant, of which he could lawfully complain, either in the admission or exclusion of evidence, or giving or refusing instructions.

Much time was spent in the contention that Fox's appointment, his authority especially to act in reference to the disposition of the nitrate of soda bags, and the relation that he occupied between the Atlas Powder Company and the United States ammonia nitrate plant, should all have been shown, either by specific act of Congress, or copies of records of the War Department, pursuant to section 882 of the Revised Statutes.[1] Assuming the way indicated to have been proper, can there be any reason why the same facts could not have been proven by other competent evidence of those having personal knowledge of the matters to which they deposed? Why should not the witness Fox testify as to what his official duties were, and be allowed to introduce the original evidence of his appointment, and the original instructions issued to him? Moreover, he was the official in possession of and having control of the bags, the subject of the alleged bribery. He was the person, after the official correspondence in relation thereto, and inspection of the bags, that the defendant saw proper to offer and pay the bribe to, to secure a fraudulent advantage against the United States; and the defendant should not now, when the government and the party sought to be bribed are endeavoring to punish him for the great wrong attempted to be perpetrated, be heard to interpose mere flimsy and fallacious objections, in order to escape liability for the crime committed.

The assignments regarding the connection between the Atlas Powder Company and the United States ammonia nitrate plant are equally devoid of merit. That the government might have gone into some detail regarding the ownership of its ammonia plant, and its business relations with the Atlas Powder Company, in the operation of the same, may be true; but, in a criminal trial of this character, undue extension of this testimony would have been undesirable, and have tended to withdraw the attention of the jury from the merits of the case. It was entirely proper for the government to prove, by proper officials at the plant, how it was operated, if the facts were within their knowledge, as they seem to have been. The witness Fox testified that the Atlas Powder Company was the agent for the United States to operate the plant; the witness Hayes, that the nitrate of soda was shipped from the army officer at Baltimore to the United States ammonia nitrate plant, care of the Atlas Powder Company, agent, at Perryville, Md., on a government bill of lading; and the witness Capt. Charles E. Coe, United States Army disbursing officer, at the Perryville plant, testified that—

264 F.—18                    [1] Comp. St. § 1494.

"when the nitrate of soda, in carload lots, packed in bags, comes to the Atlas Powder Company plant at Perryville, it is checked up by the department of which Mr. Fox is the head, and that it is in the custody of the property officer of the United States government; it comes on a government bill of lading, and the freight is paid for by the government."

These witnesses further testified that the Atlas Powder Company was paid $161,000 for the construction of the plant, and approximately $30,000 for operation; that he paid all the bills for work done and materials furnished by check drawn on 'the Treasurer of the United States; that he had disbursed on account of labor and material about $17,500,000; and that all moneys arising from the sale of bags made by the witness Fox, were turned over to him, and by him deposited to the credit of the Treasurer of the United States.

Third. The assignments of error respecting the refusal of the court to grant defendant's instructions asked for, and to the charge given, when considered in the light of the testimony, will be found to be entirely lacking in merit. The instructions asked for, one to find a verdict of not guilty, and the other that there was not sufficient evidence that Fox was lawfully authorized and empowered to dispose of the bags mentioned in the indictment, were properly refused. To have taken the case from the jury would have been plainly an unwarranted usurpation of authority, and instead of granting such motion, had the case been civil, instead of criminal, it would have been the duty of the court to instruct a verdict in accordance with the undisputed testimony. It would likewise have been error on the part of the court to take from the jury the determination of the question of whether, upon the whole evidence, the witness Fox was authorized to sell and dispose of the bags. The court's charge was eminently fair to the defendant, and correctly submitted the case to the jury. It emphasized the fact the jury must be satisfied that the witness Fox was acting on behalf of the United States in an official function under the authority of the Secretary of War, in his disposition of the bags referred to in the indictment; that his authority must have been directly derived from the Secretary of War, or through subordinate officials of the Secretary of War, acting under his sanction; that the same might be inferred from the general course of conduct of the War Department; and, further, that they must be satisfied that the money paid to Fox by the defendant was for the purpose of influencing him in his official action of and concerning the subject-matter of the alleged bribery.

The court also advised the jury of the right of the defendant to the benefit of every reasonable doubt; that there was strong evidence, both written and oral, tending to show that Fox was authorized by the Secretary of War to sell the nitrate of soda bags, and if the jury so believed, and further believed the witnesses for the government as to the payment of the $1,000 by the defendant to Fox, and the purpose for which it was paid, then, in the court's opinion, the offense charged in the third and fourth counts of the indictment had been proven, and it would be the duty of the jury to convict under said two counts. The court, however, expressly told the jury that, while this was its impression, no opinion expressed by the court could control, or even in-

fluence, them beyond its intrinsic merit; that they were the sole judges of the facts, and that their verdict should express their own conclusions from the evidence, after giving the defendant the benefit of every reasonable doubt, and bearing in mind that he appeared before the court with the presumption of innocence.

[4] Fourth. Returning to the consideration of assignment 5, having relation to the objection to the ruling of the trial court in permitting the notes of the stenographer, Gilpin, to be read to the jury, it may be said that, while the question presented is by no means free from doubt, in the judgment of the court the better, and indeed proper, course to have pursued, under the facts and circumstances of this case, was not to have allowed the notes to be read to the jury, but only to be referred to by the witness, if he so desired, for the purpose of refreshing his memory regarding anything that he might have heard at the time of taking the same.

"The reports of an ordinary private stenographer are, of course, not receivable, being merely hearsay reports by a person not produced. * * * If the stenographer is produced, the notes may, of course, be produced as an aid to memory." Wigmore on Evidence, vol. 3, § 1669.

[5] This, we think, is the general, safer, and more reasonable rule, certainly in reference to the admission of stenographer's notes taken under the conditions here. Chamberlain's Handbook on Evidence, § 638; Bates v. Preble, 151 U. S. 149, 157, 14 Sup. Ct. 277, 38 L. Ed. 106; Matthews v. United States, 161 U. S. 500, 16 Sup. Ct. 640, 40 L. Ed. 786. Just what effect should be given to the notes admitted in testimony in this case is a very different question. In other words, was or has the defendant been prejudicially affected by what was done? If not, a verdict otherwise proper and lawful ought not to be disturbed because of harmless error. We must pass upon the question in the light of the amendment to section 269 of the Judicial Code, by the Act of February 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246). The section is as follows:

"Sec. 269. All of the said courts shall have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law. *On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties.*" (The amendment italicized by the court.)

This court, in the case of Dye v. United States, 262 Fed. 6, —— C. C. A. ——, decided October 14, 1919, for the first time had under consideration this amendment, and recognized the duty to give effect to it, with the result that the court in that case said:

"Even if there had been distinct errors in the admission or rejection of testimony, or in the charge, they would not justify reversal. The guilt of the defendant was so conclusively proved that his acquittal would have been a clear miscarriage of justice."

We cannot well conceive of a case in which the guilt of the accused is more clearly and conclusively established than here, entirely inde-

pendent of anything that the stenographer may have testified to, or that may have been contained in his notes, and we are therefore of the opinion that the action of the lower court should be

Affirmed.