## PATTIS v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 21, 1927.)

### No. 4880.

**1. Criminal law ⬥1129(1)—Error alleged in brief, but not assigned as error in record, need not be considered.**

Circuit Court of Appeals is not required, under court rules to consider error alleged in brief, but not assigned as error in the record.

**2. Conspiracy ⬥23—Defendant, aiding in conspiracy to violate liquor law by selling materials after knowledge of such conspiracy is coconspirator (National Prohibition Act [Comp. St. § 10138¼ et seq.]; Penal Code, § 37 [Comp. St. § 10201]).**

Defendant, with knowledge that others were conspiring to violate National Prohibition Act (Comp. St. § 10138¼ et seq.), and were purchasing material pursuant to such conspiracy, and with such knowledge assisting and aiding by selling and delivering materials, making it possible to carry out unlawful object of conspiracy, is a coconspirator, under Penal Code, § 37 (Comp. St. § 10201), and punishable as such.

In Error to the District Court of the United States for the Eastern Division of the District of Idaho; Frank S. Dietrich, Judge.

John Pattis was convicted of conspiracy to manufacture intoxicating liquor, and of conspiracy to possess property designed for manufacture of liquor, with intent to use it therefor, and he brings error. Affirmed.

J. H. Peterson and T. C. Coffin, both of Pocatello, Idaho, for plaintiff in error.

H. E. Ray, U. S. Atty., W. H. Langroise and Sam S. Griffin, Asst. U. S. Attys., all of Boise, Idaho.

Before MORROW and RUDKIN, Circuit Judges, and NETERER, District Judge.

MORROW, Circuit Judge. On March 17, 1926, defendant, together with Dors Jensen, Clyde Clark (alias John Fuchs), and Paul Parker, was charged with conspiracy to commit an offense against the United States, in violation of section 37, federal Penal Code (Comp. St. § 10201). The first count of the indictment was as follows:

"That on or about the 13th day of June, 1925, and continuously up to and including June 25, A. D. 1925, in the county of Bannock, state and district of Idaho, Eastern division, and within the jurisdiction of this court, Dors Jensen, Clyde Clark (alias John Fuchs), John Pattis, and Paul Parker, and certain other persons to the grand jurors unknown, did then and there willfully, knowingly, unlawfully, and feloniously combine, conspire, confederate, and agree together and among themselves to commit a certain offense against the United States of America, to wit, to willfully, knowingly, unlawfully, and feloniously manufacture for beverage purposes within the county of Bannock, state and district of Idaho, and within the jurisdiction of this court, certain intoxicating liquor containing more than one-half of 1 per cent. of alcohol, to wit, certain spirituous liquor, commonly known as 'moonshine whisky,' the exact amount being to the grand jurors unknown, the said moonshine whisky to be designed, intended, and fit for use as a beverage, the manufacture of the same to be in a manner, and at a time, to wit, on and after the said 13th day of June, A. D. 1925, and at a place, to wit, about three-quarters of a mile southwest of what is known as the George Goodenough ranch, about 21 miles south and east of the city of Pocatello, Bannock county, state and district of Idaho, Eastern division, and within the jurisdiction of this court, and by the laws of the United States prohibited and made unlawful.

"1. That according to and in pursuance and furtherance of said willful, unlawful, and felonious conspiracy, combination, confederacy, and agreement, and to accomplish the purpose and effect the object thereof, the said defendants, to wit, Dors Jensen, Clyde Clark (alias John Fuchs), John Pattis, and Paul Parker, and certain other persons to the grand jurors unknown, on or about the 25th day of June, A. D. 1925, about three-quarters of a mile southwest of what is known as the George Goodenough ranch, about 21 miles south and east of the city of Pocatello, in the county of Bannock, state and district

of Idaho, Eastern division, and within the jurisdiction of this court, as aforesaid, did then and there willfully, knowingly, unlawfully, and feloniously have in their possession certain property designed and intended to be used in the manufacture of intoxicating liquor as aforesaid, said property being as follows, to wit, seventeen 52-gallon barrels containing sugar mash, 100-gallon cooler can, two coils, two stills having a capacity of about 60 gallons each, one 5-gallon keg, one bottle of coloring fluid, two dozen bungs for kegs, and certain other property to the grand jurors unknown.

"2. That according to, in pursuance and furtherance of, said willful, unlawful, and felonious conspiracy, combination, confederacy, and agreement, and to accomplish the purpose and effect the object thereof, the said defendants Dors Jensen, Clyde Clark (alias John Fuchs), and John Pattis, on or about the 13th day of June, 1925, at Pocatello, county of Bannock, state and district of Idaho, Eastern division, and within the jurisdiction of this court, conferred and agreed together for the procuring and delivery of supplies intended to be used for the unlawful manufacture of intoxicating liquor as aforesaid, said property being so far as known to the grand jurors as follows:

"Barrels, kegs, yeast, coloring, sugar, and molasses, the exact amounts thereof being to the grand jurors unknown, and did further confer and agree together for the manufacture of the said moonshine whisky, and the disposal thereof by and through the defendant John Pattis.

"3. That according to, in pursuance and furtherance of, said willful, unlawful, and felonious conspiracy, combination, confederacy, and agreement, and to accomplish the purpose and effect the object thereof, the said defendant John Pattis drove by means of an automobile, the make and description of which is to the grand jurors unknown, to the George Goodenough ranch aforesaid, on the 14th day of June, 1925, and then and there met the defendant Clyde Clark (alias John Fuchs), and conferred and arranged with the said defendant Clyde Clark (alias John Fuchs) for the delivery of the supplies set forth in the subdivision 2 hereof.

"4. That according to, in pursuance and furtherance of, said willful, unlawful, and felonious conspiracy, combination, confederacy, and agreement, and to accomplish the purpose and effect the object thereof, the said defendant Clyde Clark (alias John Fuchs), on the 14th day of June, 1925, with-

in the county of Bannock, state and district of Idaho, Eastern division, and within the jurisdiction of this court, did confer with the said defendant Dors Jensen, and requested the said defendant Dors Jensen to go to Pocatello, county of Bannock, state and district of Idaho, Eastern division, and guide delivery of the supplies heretofore mentioned and described to about three-quarters of a mile southwest of what is known as the George Goodenough ranch, about 21 miles south and east of the city of Pocatello, county of Bannock, state and district of Idaho, Eastern division, and within the jurisdiction of this court.

"5. That according to, in pursuance and furtherance of, said willful, unlawful, and felonious conspiracy, combination, confederacy, and agreement, and to accomplish the purpose and effect the object thereof, two of the said defendants, to wit, Dors Jensen and Clyde Clark (alias John Fuchs), and John Pattis, on or about the 16th day of June, 1925, at Pocatello, county of Bannock, state and district of Idaho, Eastern division, and within the jurisdiction of this court, did then and there knowingly, willfully, unlawfully, and feloniously purchase certain supplies from the Tom Cacavas Company of Pocatello, Idaho, to wit, certain property intended to be used for the unlawful manufacture of intoxicating liquor as aforesaid, said property being as follows, to wit, five cases of molasses, eleven 100-pound sacks of sugar, five gallons of oil, an oil tank, two water buckets, and seventeen barrels, and caused all of the said property to be delivered from Pocatello, Idaho, to the said George Goodenough ranch, located about 21 miles south and east of the city of Pocatello, in the county of Bannock, state and district of Idaho, Eastern division, and within the jurisdiction of this court.

"Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The second count of the indictment was in similar language, but charged a conspiracy to feloniously possess certain "property designed and intended for the manufacture of intoxicating liquor," with intent to use such property in such manufacture. The third count charged conspiracy to sell the intoxicating liquor so manufactured. The fourth count charged actual possession of the "property designed and intended for the manufacture of intoxicating liquor." The fifth count charged the maintenance of a nuisance at the George Goodenough ranch.

Jensen and Clark pleaded guilty, and Parker not having been apprehended, defendant was tried alone. Jensen and Clark testified, on behalf of the government, that this defendant was one of the owners of the Tom Cacavas Grocery Company in Pocatello, Idaho; that Jensen and Clark had determined upon making moonshine whisky at a location about 21 miles south of Pocatello, and that for the purpose of obtaining the necessary material, aside from the still, they went to defendant's grocery store, informed him of their purpose, and made arrangements by which defendant was to furnish the materials for the manufacture of the moonshine whisky, deliver them at a place near where the still was located, and that defendant would thereafter handle all moonshine whisky manufactured by Jensen and Clark at a price of $8 per gallon. Jensen and Clark also testified that, pursuant to the conspiracy, they purchased 1,100 pounds of sugar, 20 cases of molasses, 40 pounds of yeast, about twenty 52-gallon barrels, 50 gallons of kerosene, two buckets, and some groceries; that Clark paid defendant for the goods, and at the same time ordered 15 white oak charred kegs; that these goods were to be delivered by defendant at a place near the still.

The evidence also showed that Clark had brought two large stills from Butte, Montana, to Pocatello, Idaho, and had them set up at the place hereinbefore mentioned. Jensen later obtained from defendant part of the white oak charred kegs, together with a bottle of coloring matter, and a small order of groceries.

Defendant admitted the sales as testified to, with the exception of the coloring matter, which he stated Jensen brought to defendant's place, and that defendant added it to the bill of goods at Jensen's request. Jensen paid the bill. Defendant denied that he had any conversations whatever with Jensen or Clark regarding the making or handling of moonshine whisky at any price. He denied that he knew for what purpose the property was to be used.

Jensen and Clark testified that the goods were to be delivered by defendant on June 15th, and that arrangements were made for Clark to meet defendant, or whoever delivered the goods, at the Goodenough ranch, and direct them to the place where the still was located. George Goodenough, Jr., a boy of 12 years, testified that defendant drove to the Goodenough ranch on June 14th and inquired for Goodenough, Sr. Goodenough and Clark testified that defendant went to the Goodenough ranch and discussed with them the delivery of the goods, and how they could be gotten into the place in the lava rocks near the Goodenough place where the still was located; that Goodenough told Clark and this defendant that they could not go across his place; that during this time defendant discussed with Clark the making of moonshine whisky, and also his ability to handle all that they could make at a price of $8 a gallon, and that it was agreed that Clark was to send Jensen in town the next day to make the trip out with defendant's driver with the merchandise.

On March 30, 1926, the jury found this defendant guilty on the first count; guilty on the second count; not guilty on the third count. On April 5, 1926, the court passed sentence that defendant should pay a fine of $750 on the first count, and $750 on the second count, and be confined in the jail of Bannock county, Idaho, until such fines were paid.

Defendant moved for a new trial. The motion was denied, and defendant sued out a writ of error from this court, assigning as error:

I. That the District Court erred in instructing the jury to the following effect, to wit: "So you will inquire whether the defendant had knowledge that the law was to be violated in the manner set out in the three counts—that this man Clark, or Fuchs, whatever the name may be, and Jensen, were about to engage in the manufacture of intoxicating liquor, and if he had such knowledge, and with such knowledge knowingly assisted them by contributing material or appliances they needed, or helped them to get them, then he would become a coconspirator. It wouldn't be necessary to have a written or express agreement."

And upon exception being taken in the following language: "I would like, your honor, to except to the instruction to the effect, as I got it, that if Pattis knew that Clark and Jensen were going to make liquor, and he contributed the material admitted to have been sold here, that he would be guilty," the court thereupon gave the following instruction, and thereupon committed error, to wit: "I meant to say, to make it more specific, that if the defendant here on trial had knowledge that the other two were engaged in a violation of the law in the manner suggested in the indictment, that is manufacturing intoxicating liquor, etc., and if with such knowledge he gave them assistance, knowingly gave them assistance, in carrying out that unlawful purpose, by selling to them the ma-

terial that he knew and believed they would use in carrying out the unlawful purpose, in other words, that he assisted them to carry out the unlawful purpose, then he would become a coconspirator."

II. The court erred in refusing to give the following instruction requested by the defendant, to wit: "One of the essential elements of a conspiracy is the agreement between the parties, the formation of a scheme by the parties, which by the concerted action of the parties is carried out. It is not sufficient to establish this element that there are suspicious circumstances and facts which seem to indicate that one of the defendants had knowledge of the illegal nature of the transactions. Knowledge by an alleged coconspirator that other defendants are attempting by concerted action to commit a crime against the United States is not enough. Neither is it sufficient that one of the defendants knew of the intention to violate the laws on the part of the other defendants, or should have known of it as a reasonable man, and that he acquiesced in it to the extent of aiding the conspirators by selling them merchandise as is shown in this case."

III. The court erred in refusing to give the instruction requested by the defendant in the following words, to wit: "In this case it is admitted by the defendant, John Pattis, that he made certain sales of merchandise to the defendants Clyde Clark, alias John Marvin Fuchs, and Dors Jensen. You are instructed that this fact alone is not sufficient upon which to convict John Pattis. You must believe from the evidence that the sale of the merchandise was made by John Pattis to the defendants Clyde Clark, alias John Marvin Fuchs, and Dors Jensen, pursuant to an agreement entered into between John Pattis and Clyde Clark, alias John Marvin Fuchs, and Dors Jensen, to violate the laws of the United States in the manner charged in the indictment. There must have been a concert of action and intent, in so far as the defendant John Pattis is concerned, before he can be convicted under any one of the first three counts of the indictment."

IV. The court erred in refusing to give the instruction requested by the defendant in the following words, to wit: "The court instructs you that the fact that John Pattis made the sales of merchandise as admitted by him is not sufficient, standing alone, upon which a conviction can be based, even though you might be convinced from the evidence that he knew or had reason to know that the merchandise was being purchased

for the purpose of manufacturing moonshine liquor. The gist of the offense charged in the first three counts of the indictment is the entering into by the defendants Clyde Clark, alias John Marvin Fuchs, Dors Jensen, and John Pattis of an agreement which had for its object the manufacture and sale of moonshine liquor, and unless you find that such an agreement actually existed you cannot convict the defendant John Pattis under any one of the first three counts of the indictment, regardless of how suspicious may have been the circumstances attending the sale of the merchandise as detailed by the witnesses."

V. The court erred in refusing to give the instruction requested by the defendant in the following words, to wit: "The defendant in this action has offered in evidence the record of an indictment returned against three of the witnesses, George Goodenough, Dors Jensen, and Clyde Clark, alias John Fuchs. You are instructed that it is competent for the defendant to show that other criminal charges are pending in this court against any witness at the time that witness testifies. You can consider such testimony, however, not as evidence of any particular wrongful act, for, in the absence of a plea of guilty or a conviction, all defendants are presumed to be innocent of the acts charged in such indictment, but you can consider such testimony as a circumstance tending to show that any witness testifying under such circumstances may be influenced by a desire to seek the favor or leniency of the court and prosecuting officers by aiding in the conviction of the defendant."

VI. The court erred in refusing to give the instruction requested by the defendant in the following words, to wit: "The court instructs you that, in so far as the first three counts in the indictment are concerned, the particular offense charged is a conspiracy. A conspiracy is a partnership in criminal purposes. The essence of the crime is the unlawful combination. While it is not essential that the agreement by which alone a conspiracy is constituted should be formal, it is necessary that the minds of the parties meet, so as to bring about an intelligent and deliberate agreement to do the acts. Unless you find that an agreement within this definition was made, and that Pattis was a party to it, you cannot convict the defendant on any of the first three counts."

VII. The court erred in refusing to give the instruction requested of the court in the following words: "In this case the defendant Pattis took the stand and himself testi-

fied concerning the sales made to Clark, alias Fuchs, and Jensen. The mere fact that Pattis made the sales under the circumstances detailed by himself and the other witnesses, while it is a circumstance to be considered by you, nevertheless, if that circumstance is susceptible of two inferences, one of which is in favor of innocence, such circumstance is robbed of all probative value, even though from the other inference guilt may be fairly deducible."

In the brief of plaintiff in error another error is stated, but not assigned as error in the record, viz.: "The court erred in pronouncing judgment against the plaintiff in error on both counts 1 and 2, in this: That count 2 covering conspiracy to possess liquor is an offense included within the charge of conspiracy to manufacture liquor set forth in count 1. Plaintiff in error contends that the judgment of conviction on the second count must be set aside; otherwise, defendant would be twice placed in jeopardy for the same offense."

[1] We are not required, under the rules of the court, to consider an assigned error of this character, even though the indictment and proceeding be technically open to some criticism. The question before the court was, not whether a retail grocer could be legally convicted of conspiracy to manufacture moonshine whisky merely because he sold, in the ordinary course of business, goods handled by him in his trade, but in such quantities and combinations as to raise in his mind the almost certain conviction that the purchase was being made for the purpose of manufacturing liquor. The question was whether the plaintiff in error had entered into a conspiracy with the other defendants to violate the National Prohibition Act (Comp. St. § 10138¼ et seq.), and was purchasing the material for that purpose and pursuant to such conspiracy, and whether with that knowledge plaintiff in error assisted and aided the other defendants by selling and delivering the material to be so used.

[2] The court clearly instructed the jury that, if defendant had knowledge that Jensen and Clark were in a conspiracy to violate the National Prohibition Act, as charged in the indictment, and that they were purchasing material for that purpose pursuant to such conspiracy, and defendant, with such knowledge, assisted and aided Jensen and Clark by selling and delivering the materials to be used, thus making it possible to carry out the unlawful object of the conspiracy, defendant was a coconspirator. This is a correct statement of the law and supported the verdict upon either or both counts.

As we find no reversible error in the record, the judgment must be affirmed.