**Henry Grady SNEAD, Claimant,
Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 6874.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 5, 1954.

Decided Dec. 10, 1954.

Soper, Circuit Judge, dissented.

---

C. Carter Lee, Rocky Mount, Va., and R. Roy Rush, Roanoke, Va., for appellant.

Beverly A. Davis, III, Asst. U. S. Atty., Rocky Mount, Va. (John Strickler, U. S. Atty., Roanoke, Va., and Thomas J. Wilson, Asst. U. S. Atty., Harrisonburg, Va., on brief), for appellee.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and HOFFMAN, District Judge.

PARKER, Chief Judge.

This is an appeal in a proceeding instituted under 26 U.S.C. § 3116 to forfeit a truck with its load of yeast and barley malt on the ground that they were intended for use in violation of the internal revenue laws of the United States. The truck was claimed by one Henry Grady Snead and the case was tried before a jury, which returned a verdict in favor of the government. From judgment of forfeiture entered on the verdict, the claimant Snead has appealed. Three questions are presented by the appeal: (1) Was there sufficient evidence of unlawful intent on the part of Snead to support the verdict? (2) Was harmful error committed in the admission of testimony as to Snead's general reputation as a violator of the liquor laws? (3) Was there error in decreeing a forfeiture after a criminal proceeding instituted against Snead had been dismissed before the United States Commissioner? We think that all of these questions should be answered against appellant.

On the first question, there can be no serious doubt, we think, but that the evidence was sufficient not only to take the case to the jury but also to establish the guilty intent of Snead beyond all doubt or peradventure. The truck was found parked in a group of old abandoned cars behind Snead's service station in a rural section of Henry County, Virginia. It was loaded with 400 pounds of compressed yeast and 14,000 pounds of fine ground malt, for which in that community there was no reasonable use except in the manufacture of "moonshine" whiskey. Snead had gone in the truck with one Seay to Milwaukee, Wisconsin, where they had purchased the yeast and malt, buying the yeast in the name of Turner Bakery, Canton, Ohio, and the malt in the name of Roy Scott. The truck was registered in Virginia in the name of Dannie Shively. Officers of the state and federal governments kept it under observation from the time it left Milwaukee with its load of yeast and malt until its seizure. At the time it left Milwaukee it bore North Carolina license plates but in Illinois these were changed to Virginia license plates. At the time of the seizure there were no license plates of any sort on it. Snead admitted to the officers the ownership of the truck and that he had been driving it, but denied that he had been out of the state of Virginia. He claimed that he had purchased the malt "up in the country" but said he did not know from whom he purchased it and denied knowledge of the yeast. He did not take the stand nor introduce any evidence in explanation of the circumstances against him. He was not present at the trial and his counsel asked no continuance on account of his absence.

In the light of these circumstances, there can be no reasonable doubt but that Snead had the yeast and malt in his possession for an unlawful purpose. There would have been no reason, otherwise, in his taking a lengthy trip to purchase in Milwaukee articles which could have been purchased and transported much more conveniently in the ordinary

channels of commerce, and there would have been no occasion for the purchase in fictitious names or for the change of license plates on the truck or for the false statements to the officers. A significant circumstance which can properly be considered, as this is a civil and not a criminal case, is the fact that Snead failed to take the stand to account for his possession of the large quantity of malt and yeast, which in his community would normally be used only in connection with illicit distilling. See Williams v. United States, 5 Cir., 199 F.2d 921; Stagner v. United States, 5 Cir., 197 F.2d 992; Kent v. United States, 5 Cir., 157 F.2d 1, certiorari denied 329 U.S. 785, 67 S. Ct. 297, 91 L.Ed. 673.

■ It is argued that Snead may have had the yeast and malt for sale to others in ordinary course of trade. It is a sufficient answer that he offered no evidence to that effect and that he was engaged in no legitimate business which would account for their possession. Furthermore, if he had acquired and had them in his possession for use in the illegal manufacture of whiskey, it would make no difference that he intended to sell them to others who would engage in the actual manufacture. Merchants who procure supplies for illicit distillers, knowing of the purpose to which they are to be put, cannot shield themselves from the forfeiture which the law prescribes by providing that they are to be paid. Backun v. United States, 4 Cir., 112 F.2d 635, 637. As said by this court in that case:

"* * * those who make a profit by furnishing to criminals, whether by sale or otherwise, the means to carry on their nefarious undertakings aid them just as truly as if they were actual partners with them, having a stake in the fruits of their enterprise. To say that the sale of goods is a normally lawful transaction is beside the point. The seller may not ignore the purpose for which the purchase is made if he is advised of that purpose, or wash his hands of the aid that he has giv-

en the perpetrator of a felony by the plea that he has merely made a sale of merchandise. One who sells a gun to another knowing that he is buying it to commit a murder, would hardly escape conviction as an accessory to the murder by showing that he received full price for the gun; and no difference in principle can be drawn between such a case and any other case of a seller who knows that the purchaser intends to use the goods which he is purchasing in the commission of felony. In any such case, not only does the act of the seller assist in the commission of the felony, but his will assents to its commission, since he could refuse to give the assistance by refusing to make the sale. This is the view taken of the matter in a number of well considered cases in the federal courts. Pattis v. United States, 9 Cir., 17 F.2d 562; Vukich v. United States, 9 Cir., 28 F.2d 666, 669; Borgia v. United States, 9 Cir., 78 F.2d 550, 555; Anstess v. United States, 7 Cir., 22 F.2d 594; Hubinger Co. v. United States, 7 Cir., 64 F.2d 772; Rudner v. United States, 6 Cir., 281 F. 516, 519. It is in harmony with the well settled rule that one who, with knowledge of the existence of a conspiracy, aids in carrying out its unlawful design makes himself a party thereto. Simpson v. United States, 4 Cir., 11 F.2d 591."

■■ We agree with appellant that evidence of Snead's reputation as a violator of the liquor laws was not competent evidence on the question of intent which the jury was trying. As to this, the general rule is applicable that, in civil actions not affecting the character or reputation of the parties, evidence as to character or reputation is not admissible. 20 Am.Jur., pp. 299 and 300. It has been expressly held that evidence of good character of the owner should be excluded in forfeiture proceedings. Riggs v. State ex rel. Jones, 217 Ala. 102, 115 So. 1; Hammett v. State, 42

Okl. 384, 141 P. 419. Evidence of his bad character should likewise be excluded, as it has no logical tendency to prove the fact in issue. Cf. Davila v. United States, 1 Cir., 54 F.2d 356. Cases cited which allow proof of reputation of places in prosecutions for keeping a disorderly house or maintaining a nuisance have no bearing on the point here under consideration. Reputation of a place may very well tend to show the intent of the owner, but the reputation of the owner has no tendency to establish his intent and, in the absence of statute, we know of no cases holding it admissible even in the disorderly house and nuisance cases. In this case it is the intent of the owner in the possession of the truck and cargo which is in question. No cases are cited sustaining the admissibility of the reputation of the owner to establish such intent and we know of none.

■ We think, however, that the error in the admission of this testimony was harmless in the light of the other testimony in the case. Possession of so large a quantity of yeast and malt in Henry County, Virginia, was not reasonably explainable on the basis of any lawful purpose, and the fact that Snead did not take the stand or offer any explanation was a deadly circumstance against him. Added to this were the inferences to be drawn from the purchases under assumed names in distant Milwaukee, the change of license plates and the false statements made to the officers. With the evidence as to reputation out of the case, the jury could not have rendered a verdict in favor of appellant without stultifying itself. In such situation, any error in the admission of the evidence must be held to be harmless. Wigmore on Evidence, 3d ed., vol. 1, pp. 364–395; 28 U.S.C. § 2111; Rule 61 of Federal Rules of Civil Procedure, 28 U.S. C.A.; Rule 52(a) of Federal Rules of Criminal Procedure, 18 U.S.C.A.; Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593; Horning v. District of Columbia, 254 U.S. 135, 41 S. Ct. 53, 65 L.Ed. 185; Hilliard v. United States, 4 Cir., 121 F.2d 992, 999, certiorari denied 314 U.S. 627, 62 S.Ct. 111, 86 L.Ed. 527; Chevrolet Motor Co. v. Gladding, 4 Cir., 42 F.2d 440, 445, certiorari denied 282 U.S. 872, 51 S.Ct. 78, 75 L.Ed. 770; Carpenter v. United States, 4 Cir., 280 F. 598; Sneierson v. United States, 4 Cir., 264 F. 268, 275–276, certiorari denied 253 U.S. 490, 40 S.Ct. 584, 64 L.Ed. 1028; Dye v. United States, 4 Cir., 262 F. 6, 11; United States v. Tramaglino, 2 Cir., 197 F.2d 928, 932, certiorari denied 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670; United States v. Broxmeyer, 2 Cir., 192 F.2d 230, 234; Simons v. United States, 9 Cir., 119 F.2d 539, 559, certiorari denied 314 U.S. 616, 62 S.Ct. 78, 86 L.Ed. 496; United States v. Wexler, 2 Cir., 79 F.2d 526, 530 (opinion by Judge Learned Hand), certiorari denied 297 U.S. 703, 56 S.Ct. 384, 80 L.Ed. 991; Miller v. United States, 8 Cir., 21 F.2d 32, certiorari denied 276 U.S. 621, 48 S.Ct. 301, 72 L.Ed. 735; Hobart v. United States, 6 Cir., 299 F. 784.

Rule 61 of the Rules of Civil Procedure is controlling here, as this is a civil case. That rule provides:

"Rule 61. Harmless Error   No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

The latest expression of the Supreme Court on the subject is contained in Lutwak v. United States, supra [344 U.S. 604, 73 S.Ct. 490], involving the erroneous admission in evidence of a declaration made by one of a group of conspira-

tors after the conspiracy had ended. The court said:

"Was the admission of this one item of hearsay evidence sufficient to reverse this case? We think not. In view of the fact that this record fairly shrieks the guilt of the parties we cannot conceive how this one admission could have possibly influenced this jury to reach an improper verdict. A defendant is entitled to a fair trial but not a perfect one. This is a proper case for the application of Rule 52(a) of the Federal Rules of Criminal Procedure. We hold that the error was harmless."

In Kotteakos v. United States, 328 U. S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, the Supreme Court said: "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress." Here there was no "departure is from a constitutional norm or a specific command of Congress;" and, in the light of the other testimony in the case, the jury could not have been influenced by the testimony as to character to return a verdict which it would not otherwise have returned. In Dye v. United States, supra, 262 F. 10, Judge Woods speaking for this court said, "Even if there had been distinct errors in the admission or rejection of testimony, or in the charge, they would not justify reversal. The guilt of the defendant was so conclusively proved that his acquittal would have been a clear miscarriage of justice." The same is true in this case as to Snead's intent with respect to the yeast and malt of which he was admittedly in possession.

■ There is no merit in the contention that the forfeiture proceeding cannot be maintained because of the dismissal before the United States Commissioner of the criminal proceeding against Snead involving the same subject matter. The case of Coffey v. United States, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684, and United States v. One De Soto Sedan, 4 Cir., 180 F.2d 583, upon which appellant relies, hold merely that acquittal in a criminal case bars prosecution of a proceeding for forfeiture involving the same facts. This was in application of the principle of *res judicata*, which can have no possible application where the criminal proceeding was dismissed without trial.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.

SOPER, Circuit Judge (dissenting).

It seems unwise, especially in a case of minor importance, to make an unprecedented decision as to the kind of proof which may be received when the crucial issue is whether an individual has committed a crime. Technically the case before us is a civil action brought by the United States for the forfeiture of an automobile; but in order to succeed it was necessary for the Government to prove that the owner of the car had committed the criminal offense of using the car for the transportation of materials to be used for the illicit manufacture of distilled spirits with intention to defraud the United States. The nature of the charge is shown by the stipulation of counsel that the evidence offered in this case as to the transportation of the materials was presented to the United States Commissioner as proof that the owner of the car had committed a criminal offense in violation of §§ 3115 and 3116 of Title 26 of the Internal Revenue Code, and that subsequently the charge was dismissed at the direction of the United States Attorney.

With these facts in mind no good reason appears for relieving the Government from the obligation to prove its case by evidence which is in accord with the constitutional procedures followed in this country for the protection of persons accused of crime. In many civil and criminal cases it has been held that the commission of harmless error by the trial judge should not require a reversal;

but except in cases relating to the keeping of a disorderly house, or the maintenance of a nuisance under the prohibition law, no case has been found which has decided that evidence of bad reputation may be admitted as proof of a crime, or that its wrongful admission does not constitute reversible error.

The dearth of authority is doubtless due to two reasons: First it is quite impossible to say that evidence of bad character does not influence the trier of facts. In the pending case there was persuasive circumstantial evidence that the truck was used by Snead to transport the materials unlawfully, but the United States Attorney, obviously not satisfied that the evidence was strong enough to convince the jury, therefore offered the evidence of Snead's bad reputation and insisted upon its reception although the judge was somewhat doubtful of its admissibility. Moreover, it is reasonable to assume that the United States Attorney dismissed the criminal case because he realized that he could not use the evidence of reputation at the trial thereof. A glance at the evidence admitted over the objection in the instant case demonstrates at once its harmful character. Two federal officers and a county policeman, who admitted that they had never been able to secure sufficient evidence to justify the arrest of Snead for violating the liquor laws, were allowed to testify not only that Snead had a bad reputation for dealing in untaxed whisky, but also that he was *known* to them as a violator of the Internal Revenue laws, and that his service station was *known* to them as a transfer place for violators of these laws. In this state of the record how can it be said that the jury was not impressed by the testimony of the officers of the law or that the error of the court in admitting the evidence was harmless? It is not without significance that the United States Attorney in his brief does not invoke the doctrine of harmless error, on which the court has based its decision.

In the second place it is probable that no precedent for the action of the court has been found because it has never been thought that the commission of crime may be proved by evidence of bad reputation. The requirement of the Sixth Amendment that in a criminal prosecution the accused shall enjoy the right to be confronted by the witnesses against him is fundamental to our jurisprudence, and the doctrine of harmless error may never be invoked "where the departure is from a constitutional norm". Kotteakos v. United States, 328 U.S. 750, 764, 66 S. Ct. 1239, 1248, 90 L.Ed. 1557. This statement was made in a criminal case. But, when the controversy before the court turns on the proof of the existence of a crime, the rulings on points of evidence should not be governed by technicalities. It is far more important to safeguard constitutional principles than to save the time and effort that would be required to retry the case.