### KENNEDY v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. July 5, 1921.)

No. 1882.

1. **Carriers ⬸38—Indictment for falsifying accounts of interstate carrier held sufficient.**

    An indictment under Interstate Commerce Act Feb. 4, 1887, § 20, par. 7 (Comp. St. § 8592) for falsifying the records of an interstate carrier, need not charge that such records were records prescribed by the Interstate Commerce Commission.

2. **Carriers ⬸38—Evidence held to sustain conviction for falsifying records of carrier.**

    Uncontradicted evidence, including that of defendant, *held* to sustain a charge under Interstate Commerce Act Feb. 4, 1887, § 20, par. 7 (Comp. St. § 8592), of willfully failing or neglecting to make full, true, and correct entries in the accounts and records of an interstate carrier of facts appertaining to the carrier's business.

3. **Criminal law ⬸1168(1), 1172(1)—Conviction legal on one count which warrants sentence not reversed for error in rulings on evidence, and instructions.**

    Where a conviction on one count of an indictment, sustained by undisputed evidence, warrants the sentence imposed, the judgment will not be reversed for errors in the charge or rulings on evidence.

4. **Carriers ⬸38—Memoranda kept by clerk held part of carrier's records.**

    Memoranda kept by the car clerk of a railroad company, devised by him as a part of the system of his office, *held* records of the company.

5. **Criminal law ⬸799—Comments of court on argument of counsel held not error.**

    Comments of the court in its charge on arguments made by defendant's counsel, which were outside the record and tending to prejudice the jury, *held* not error.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Columbia; Henry A. Middleton Smith, Judge.

Criminal prosecution by the United States against John J. Kennedy. Judgment of conviction, and defendant brings error. Affirmed.

John I. Cosgrove, of Charleston, S. C. (W. Turner Logan, of Charleston, S. C., on the brief), for plaintiff in error.

⬸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

J. Waties Waring, Asst. U. S. Atty., of Charleston, S. C. (Francis H. Weston, U. S. Atty., of Columbia, S. C., on the brief), for the United States.

Before KNAPP and WOODS, Circuit Judges, and WATKINS, District Judge.

WOODS, Circuit Judge. [1] The defendant, John J. Kennedy, a clerk in the Charleston freight office of the Southern Railway Company, was convicted on an indictment under subdivision 7, § 20, Act Feb. 4, 1887, as amended (Comp. St. § 8592). The indictment charges, in counts 1 and 4, willfully making false entries in records kept by an interstate carrier; in counts 2, 5, and 7, willfully neglecting and failing to make full, true, and correct entries of facts appertaining to the business in records kept by an interstate carrier; and, in counts 3, 6 and 8, willfully altering and falsifying records kept by an interstate carrier. Each count specifies the alleged records and the facts alleged to constitute the offense. There was a demurrer to the indictment on the ground that there was no allegation that the records referred to in the indictment were accounts, records, or memoranda prescribed for carriers engaged in interstate commerce by the Interstate Commerce Commission.

Subsection 5 provides that the Commission may, in its discretion, prescribe the forms of any and all accounts, records, or memoranda kept by the carrier. Subsection 6 provides a forfeiture by the carrier for failure to keep the accounts, records, and memoranda on the books in the manner prescribed by the Commission. Subsection 7 provides:

"Any person who shall willfully make any false entry in the accounts of any book of accounts or in any record or memoranda kept by a carrier, or who shall willfully destroy, mutilate, alter, or by any other means or device falsify the record of any such account, record, or memoranda, or who shall willfully neglect or fail to make full, true, and correct entries in such accounts, records, or memoranda of all facts and transactions appertaining to the carrier's business, or shall keep any other accounts, records, or memoranda than those prescribed or approved by the Commission, shall be deemed guilty of a misdemeanor."

The statute evidently was framed to accomplish two distinct purposes: First, that all accounts, records, and memoranda of the carrier, whether prescribed by the Commission or not, should be true and correct; second, to secure uniformity and prevent secret dealing, that the accounts, records, and memoranda prescribed by the Commission should be used exclusively. Hence it was unnecessary to charge that the records alleged to have been falsified were prescribed by the Commission.

[2] The following is a summary of the material evidence adduced by the government: The Southern Railway Company and other interstate carriers delivered cars of hay, corn, and other products to the Charleston Terminal Company. The terminal company in turn placed them on the side tracks of the dealers to whom they were consigned. If the cars were consigned "order notify," the rule of the carriers was that the buyer should open and unload the car in his warehouse only

on his presentation of the bill of lading, either to the railway company or the terminal company, which showed that he had paid the draft to which the bill of lading was attached. Kennedy was car clerk in the office of the Southern Railway Company, charged with the duty of issuing directions as to the disposition of cars. He kept in his office a book in which was entered a complete record of each car, including the information whether it contained an open or order notify shipment. When the car went to the terminal company he sent a manifest or memorandum to it, indicating whether the car was open or order notify; that is, whether it was to be delivered to the consignee at once or only on presentation of the bill of lading. Kennedy's duty was to keep a true copy of this manifest in the Railway Company's office.

All the cars mentioned in the indictment were order notify, and intended for one C. F. Boyd, on payment of the drafts and production of the bills of lading to which they were attached. In order that Boyd might get these cars without paying the drafts and producing the bills of lading Kennedy falsely indicated, on the manifests sent to the terminal company as records to be kept by it, that the charges had been paid, or omitted from such records the letters indicating that the shipments were order notify, and kept in the railway office what purported to be copies of these manifests which were not copies, in that they did not contain the words indicating that the railway had the bill of lading for an order notify shipment, or contained the words indicating order notify which did not appear in the manifest sent to the terminal company. After the discovery of the transactions and the consequent loss to the Southern Railway Company, Kennedy signed a letter exculpating Seay, the city freight agent, and taking upon himself the entire blame. According to the testimony of Gregory, the special agent of the government, Kennedy said that Boyd had made a tool of him, and explained the manner in which he had made the manifests sent to the terminal company indicate that the cars were free, and those retained as carbon copies in his office indicate that they were held as order notify. Kennedy gave to the special agent a number of letters written to shippers by his direction, assuring them that their goods were in the Southern Railway warehouse, and that Boyd expected to be able to pay for them soon. These letters were not mailed for fear they would get him in further trouble. This evidence, if true, made a perfectly clear case of deliberate falsification of the records of the carrier as charged in the indictment.

Defendant testified that the manifests were not railway records, but memoranda kept for his own private information as to the handling of the cars; that he had the cars delivered to Boyd without seeing the bills of lading on Boyd's assurance that he had "that fixed," which he understood to mean that Boyd had the bill of lading in his hand, or had an uncertified check and was going to deposit it, or had the agent's orders for him to receive the car free on his assurance that he would pay for it in a day or two or some future day; and that he released the cars on the direction of Seay, his superior. Defendant also offered to show that it was the custom of the carriers in Charleston to release

order notify cars on the promise of shippers to pay the draft and produce the bill of lading.

Anxious consideration of the testimony offered by the defendant leaves no escape from the conclusion that it furnishes no denial and no defense to the plain case made out by the government. Assume the customary violation of the carrier's orders by frequent release of order notify cars without the surrender of the bills of lading under the direction of the freight agent, and such direction to Kennedy in these instances; assume their release on the faith of Boyd's statements that he had the bills of lading, or uncertified checks, or the authority of the freight agent to get the cars without them; assume the memoranda or manifests kept by Kennedy in the carrier's office and in its business to be kept for his own convenience as clerk, and not as a record of the carrier—the undisputed testimony still proves a plain violation of the statute as charged in the seventh count.

The bill of lading and the record book in the defendant's office showed that the shipments were order notify. The charge in the seventh count and the proof was that car No. 28736 was consigned order notify, and was so entered on the waybill and on the car book kept by Kennedy. In the memorandum or manifest sent by Kennedy officially to the terminal company to indicate the car and whether it was free or order notify, and to control the terminal company in handling the car, he deliberately and intentionally omitted the words "order notify." This was beyond all dispute willful neglect and failure to make a full, true, and correct entry of facts appertaining to the carrier's business of handling the shipment. Hence in any view of the law and the facts there was no possible escape from conviction on the seventh count, and conviction on that alone would support the sentence.

[3] This being so, no errors in the charge or in the exclusion of testimony as to custom would warrant a reversal. Amendment, 1919, § 269, Judicial Code (Comp. St. Ann. Supp. 1919, § 1246); Dye v. U. S. (C. C. A.) 262 Fed. 6, 9; Sneierson v. U. S. (C. C. A.) 264 Fed. 268, 275.

[4] There is, however, no ground for the contention that the memoranda or manifests kept by Kennedy when he sent the originals to the terminal company were not records or memoranda of the carrier. On the contrary, we think on Kennedy's own testimony the District Judge was right in charging the jury that they were records of the carrier. He testified that they were not included in any inspection, that they remained in his possession, and that he destroyed them when he saw fit. But he also testified that they were devised by him as car clerk as a part of "the system" of his office, for his information and convenience in the transaction of the carrier's business. He did not deny the testimony of the government witnesses that these manifests or memoranda were actually found among the records of the Southern Railway's freight office. There was also uncontradicted testimony that they were usually kept, and that they were essential as copies of the originals sent to the terminal company. Indeed, it is evident these copies were essential memoranda for the use of the railway company as checks on the

terminal company. When, therefore, the defendant willfully omitted the notation "order notify" on the original sent the terminal company and entered it on the purported copy retained, and entered on the original "One car B. L. surrendered up here chgs. paid," or the words "B. L. up here," and omitted them from the purported copies retained, he willfully made false entries, and willfully neglected to make full, true, and correct entries of facts appertaining to the business of the carrier in records kept by the carrier.

Even if proof of the custom of the agents of the carrier to release cars without surrender of the bills of lading would justify or excuse the defendant in directing the terminal company to deliver the cars, this proof would not justify or excuse the violation of the statute in procuring the release by means of false entries on the records and memoranda of the carrier.

The letters written to the consignees, though not sent, the letter signed by defendant to the freight agent, assuming all responsibility, and portions of defendant's statements made to the government agents, were obviously in the nature of admissions and confessions, and there was no error in charging the jury on those subjects.

[5] The only remaining assignments of error are those relating to the arguments of counsel and the comments of the District Judge thereon in the course of his charge. The record contains this statement:

"Counsel for the defendant both made arguments on his behalf to the jury. In the course of his argument, Mr. J. I. Cosgrove, among other things, in substance, said to the jury, that the jury must remember that 'the case is between the United States, a gigantic government that can spend all the money and get all the witnesses that expense will allow them; that it has special agents and detectives and attorneys, all anxious to prosecute and convict; and poor John J. Kennedy, a mere boy, with no one to help and protect him, without friends. That this great government does not spare expense to obtain results, and its detectives and assistants to the Department of Justice have been after poor Kennedy to obtain a victim.' "

"That Mr. W. T. Logan, in the course of his argument, among other things said in substance that the 'defendant had been dragged into the United States court away from his own court, and that the only safety and salvation for you is in the state courts.' "

In commenting on these appeals the trial judge said to the jury that the United States court was as much the people's court—their court— as the state courts; that the United States government had been improperly described as a "monster pursuing this individual who happens to be poor"; that it was the duty of the government agents to discover crime and prosecute criminals; that to say that this meant that the government as a whole is prosecuting, in the sense of annoying or persecuting, the individual, unless such a plot is exposed by the evidence, is absurd. It is due to the intelligent counsel for defendant to say, we cannot doubt that as soon as the heat of combat had subsided they must have recognized and deeply regreted that their zeal had betrayed them into an attempt to appeal to the supposed prejudice of the jury, meriting explicit condemnation. They cannot complain that the presiding judge used language which though strong was descriptive, in removing from the mind of the jury any effect of such an improper

appeal. Nor can they complain that they were allowed to complete their arguments without interruption.

In other respects the charge was too favorable to the defendant, in that it submitted to the jury questions as material in deciding the guilt or innocence of the defendant, whereas, in our view, if the jury believed the undisputed testimony of the government and the whole of the testimony on behalf of the defendant, he was guilty as charged in the indictment.

Affirmed.