### LEGMAN v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. January 24, 1924.)

No. 3030.

1. **Searches and seizures ⬤�net7—Constitutional limitations apply to federal agencies only.**

   The limitations of the Fourth Amendment on searches and seizures are confined to the federal government and its agencies.

2. **Criminal law ⬤⟶394, 395—Intoxicating liquors ⬤⟶249—Search of private dwelling by prohibition agents without warrant held unlawful.**

   Federal prohibition agents entered defendant's private dwelling at night, in his absence, and without a search warrant, and there found wine and whisky, which they seized. Police officers were already in the premises, and had found certain other articles, on which the charges against defendant were in part based. *Held*, that the search and seizure by the prohibition agents were unlawful, and that the admission in evidence of their testimony and the articles found and seized by them, over timely objection and application for return of such articles, was error.

3. **Criminal law ⬤⟶1169(1)—Admission of incompetent evidence held prejudicial error.**

   Where the effect on the verdict of the jury of incompetent evidence is unknown and merely speculative, its admission must be *held* reversible error.

4. **Criminal law ⬤⟶1168(2)—Permitting articles unlawfully seized to be offered and discussed before jury held prejudicial.**

   Where an application by defendant before trial for return of articles unlawfully seized from his dwelling was erroneously denied, it was prejudicial error to allow such articles to be offered in evidence and discussed before the jury, and to permit a witness to testify to finding them in defendant's premises, though they were finally excluded.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Criminal prosecution by the United States against Leopold Legman. Judgment of conviction, and defendant brings error. Reversed and remanded.

Joseph Kraemer, of Newark, N. J. (Kraemer & Siegler, of Newark, N. J., of counsel), for plaintiff in error.

Walter D. Van Riper, of Newark, N. J., for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. The defendant was tried, convicted, and sentenced on an information charging him with maintaining a common nuisance, unlawful possession of a five-gallon still, and manufacturing intoxicating liquor containing more than one-half of 1 per centum of alcohol by volume, at No. 346 Warren street, Newark, N. J., in violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).

The testimony establishes that, shortly after 8 o'clock on the evening of January 3, 1923, two police officers, Lozier and Moran, of the city of Newark, entered what appeared to be the kitchen of the house occupied by the defendant and his family. Later they were joined by Officers Cran, Fletcher, and Cullen. In this room they discovered a 50-gallon barrel, three-quarters full of mash, and what looked like prune juice or mash smeared over the ceiling, walls, bed, and table. They also found on the premises a copper still, or boiler, with the top blown off. Some of the policemen left, but Cullen remained at the home until about a quarter past 10 o'clock, when Prohibition Agents Moss, Howard, and Fisher entered the house. Moss was the prohibition director of New Jersey, and Howard was the acting head of the prohibition field force. Mrs. Legman, defendant's wife, was in the house when they came, but her husband had been taken to the police station by some of the policemen. The evidence does not disclose why the prohibition agents went there at that time of night, but it is obvious that they had been informed of what was transpiring at the defendant's home and went there in search of evidence to be used against him.

It is nowhere claimed that these agents entered the defendant's private dwelling on invitation of either himself or his wife, or on the authority of a search warrant. Fisher was allowed to testify over objection to what they found in the kitchen, including exactly what the police officers had discovered. He also testified that they "found considerable wine and considerable moonshine whisky. * * * The most of it was found in the room next to the kitchen." The presence of these was unknown to the police officers when the prohibition agents entered the house. These agents took samples of the mash, a bottle of the whisky, and the still, and produced them at the trial.

The defendant made prompt application, before the trial, to the judge of the District Court for the return of the seized property, consisting of the wine, whisky, still, and mash, and for the suppression of evidence relating to them; but he reserved decision, saying that he could

control the matter when the evidence was offered at the trial. The application was renewed, before the trial began, on the ground "that the premises of the defendant Legman was a private dwelling occupied by him as such, and shown by the testimony of the government's witnesses, and that the seizure of the evidence upon which this information was based was made without a search warrant, in violation of the Fourth and Fifth Amendments of the United States Constitution." Again, after the testimony had been admitted, the defendant moved "that the testimony relating to what he (Prohibition Agent Fisher) found in the dwelling house when he got there without the search warrant, his testimony with respect to the mash and the moonshine, be stricken out;" but the court refused, and allowed an exception.

The Fourth Amendment provides that:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

The right of security to person and property is not against *all* searches and seizures, but against *unreasonable* searches and seizures only. The question, therefore, is: Were the search and seizures unreasonable in this case?

[1, 2] It does not appear that the policemen acted under any claim of federal authority. The Fourth Amendment is not directed to misconduct of state officials. Its limitations are confined to the federal government and its agencies. Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Twining v. New Jersey, 211 U. S. 78, 29 Sup. Ct. 14, 53 L. Ed. 97; Weeks v. United States, 232 U. S. 383, 398, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 392, 40 Sup. Ct. 182, 64 L. Ed. 319. We are not concerned therefore, in this review, with what the policemen did. Our inquiry is directed solely to the conduct of the federal agents. In their search they discovered all that the policemen found, and, at least, wine and whisky in addition. The testimony of Prohibition Agent Fisher covers the entire testimony of the policemen, and also the results of the search made by the prohibition agents alone. We do not, therefore, have any element of the conviction resting exclusively upon the testimony of the policemen, but the conviction on all three counts depends upon either the joint testimony of state and government officials, or upon that of government officials only.

For instance, Legman was convicted in the first count of maintaining "a common nuisance, in that he did unlawfully, willfully, and knowingly keep on the premises situated at 346 Warren street, Newark, New Jersey, certain intoxicating liquor, to wit, wine and whisky, which was intoxicating liquor." But wine and whisky were not found by the policemen in their search. They were found by the prohibition agents alone, in a room not searched by the policemen, and Fisher only testified to finding them. In the second count the defendant was convicted of having a still in his possession, testified to by both the police-

men and Prohibition Agent Fisher. The learned trial judge directed a verdict on the third count of the information for unlawful possession of intoxicating liquor, on the ground that "the evidence seemed to be a little weak in that respect." He was convicted, on the fourth count, of unlawfully manufacturing intoxicating liquor, based upon the finding of the still, mash, prune juice, wine, and whisky on the premises, which was established in part by the testimony of the policemen and in part by the testimony of the prohibition agent.

[3] We are not disposed to speculate as to the proportionate effect upon the jury of the testimony of the policemen, on the one hand, and of the prohibition agent, on the other, as to the results of their separate or joint searches. The relative weight which the jury gave to the testimony of the policemen and agent is unknown. Whether the defendant would have been convicted on any count on the testimony of the policemen only is also unknown. It may be that, without the corroboration and independent testimony of the prohibition agent, the defendant would not have been convicted, or, on the other hand, he might have been convicted on all counts on the testimony of the policemen alone. What the jury might have done without the testimony of the prohibition agent is mere speculation, in which we cannot indulge to the injury of the defendant. The fact is that, if the search was unreasonable within the meaning of the Fourth Amendment, the defendant had the right to demand that the prohibition agents remain absolutely silent as to what they found in their search. If knowledge of the facts had been gained from an independent source, not connected with governmental agencies, they might have been proved, like any other fact; but knowledge gained by the government's own wrongdoing, alone or in connection with other agencies, may not be used against defendants in federal courts. In other words, if the search made by the prohibition agents was unreasonable, the fact that state officials, whom the Fourth Amendment does not reach, made a search either alone or with them, does not make reasonable and legal an otherwise unreasonable and illegal search, and a verdict based in part upon the disclosures of the unreasonable search cannot stand. Weeks v. United States, supra; Silverthorne Lumber Co. v. United States, supra.

In the case of Weeks v. United States, supra, police officers went to the house of the defendant in his absence, searched it, and took papers and articles found there, and afterwards turned them over to the United States marshal, who later in the day went to the house with the policemen to find additional evidence, and, being admitted in response to a rap, the marshal searched the defendant's room, and took away certain letters and envelopes found in the drawer of a chiffonier. Before the trial, defendant filed a petition for the return of the private papers, books, and other property then held by the government. The lower court entered an order directing the return of such property as was not pertinent to the charge against the defendant, but denied the petition as to pertinent matter, reserving the right to pass upon the pertinency later. After the jury had been sworn, but before any evidence had been given, the defendant urged his petition for the return of his property, but the court refused to order it returned. When

the papers were offered in evidence, the defendant objected to their admission on the same grounds upon which the objections were based in the case at bar; that is, that they were obtained without a search warrant, in violation of the Fourth and Fifth Amendments to the Constitution of the United States. The Supreme Court held that the marshal—

"acted without sanction of law, doubtless prompted by the desire to bring further proof to the aid of the government, and under color of his office undertook to make a seizure of private property in direct violation of the constitutional prohibition against such action. Under such circumstances, without sworn information and particular description, not even an order of court would have justified such procedure, much less was it within the authority of the United States marshal to thus invade the house and privacy of the accused."

[4] The facts in that case, mutatis mutandis, are practically the same as in the case at bar, and the principles announced there are controlling here. It makes no difference that the government failed to have some of the property taken from the defendant's dwelling admitted in evidence. It was before the jury and was discussed in its presence. Fisher was permitted over objection to testify to what the agents found. The government may not thus take advantage of its own wrong. Silverthorne Lumber Co. v. United States, supra. Nor does it avail that the prohibition agents did not break down the doors of defendant's dwelling, nor force their way into it, but entered when the defendant was at police headquarters, and while the house was under surveillance of the policemen. Weeks v. United States, supra; Gouled v. United States, 255 U. S. 299, 41 Sup. Ct. 261, 65 L. Ed. 647.

Unlawful and unconstitutional practices get their first footing by silent approaches and slight deviations, under extenuating circumstances, from legal modes of procedure. To obviate these, constitutional provisions for the security of person and property must be liberally construed. The great end for which men entered into society and became parts of the social organism was to make their person and property secure. The right to this security is preserved sacred and incommunicable in all instances, except when taken away or abridged by some public law for the good of the whole. Entick v. Carrington and Three Other King's Messengers, 19 Howell's State Trials, 1029; Boyd v. United States, supra. This right is so sacred and fundamental that it was determined to implant it in out institutions in the fullness of its integrity by making it a part of the Constitution, free from the possibility of future legislative change. Bram v. United States, 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568; Weeks v. United States, supra. A man's home is regarded in American and English law as his castle, and not to be invaded under any general authority to search and seize his property. Cooley's Constitutional Limitations, pp. 425, 426; Lieber's Civil Liberty and Self-Government, 62. It is therefore the duty of courts to be watchful for stealthy encroachments against the constitutional rights of citizens (Boyd v. United States, supra), and this watchfulness applies to the administration of the National Prohibition Act, just as to any other law.

For these reasons, the judgment of the District Court is reversed, and the case remanded for a new trial.

Judge BUFFINGTON took no part in the consideration or decision of this case.