## FEITLER et al. v. UNITED STATES.

Circuit Court of Appeals, Third Circuit. July 19, 1929.

No. 3996.

Ward Bonsall and John S. Pyle, both of Pittsburgh, Pa., for appellants.

John D. Meyer, U. S. Atty., and Jos. A. Richardson, Asst. U. S. Atty., both of Pittsburgh, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. On a libel for the forfeiture of goods and wares which, after search, the United States had seized because designed for the manufacture of liquor intended for use in violating the National Prohibition Act, the District Court decreed that the goods so seized and enumerated in the libel be forfeited to the United States and destroyed. The respondents appealed. The many errors they assign may be grouped and reduced to three. ■ The first is that the libel is bad as a pleading because it does not state facts which in themselves warrant or sustain the decree asked for. 33 Corpus Juris, 1139.

The libel avers the previous seizure and present custody by the United States of contraband liquors and property designed for the manufacture of such liquors which the respondents unlawfully possessed, held and used at a named place in violation of section 25, title 2, of the National Prohibition Act (27 USCA § 39). As this is a pleading not in a criminal action but in a civil suit, it is, we think, good under authority of United States v. 385 Barrels of Wine, 300 F. 565, if any authority be needed in view of the clear averments of the unlawful possession and intended use of the property, aided by a full and carefully prepared bill of particulars made a part of the libel. ■ The respondents next charge error in the decree because, as they claim, it is based on a search and seizure made in violation of the Fourth Amendment to the Constitution in that the affidavit on which the search warrant issued did not show probable cause. The protection which the Fourth Amendment affords against unreasonable searches and seizures is so differently regarded by persons who, on the one hand, in their zeal to enforce some other law are inclined to impinge upon this law, and persons who, on the other hand, resort to it as a cover in violating some other law, that this court, conscious of its duty to maintain this constitutional provision in all its integrity and sanctity and alert to stem any effort to enlarge or restrict it by misuse in one way or another, always pauses whenever action under the provision is challenged and, even when on its face it seems trivial, gives it full and very careful consideration. Byars v. United States, 273 U. S. 28, 47 S. Ct. 248, 71 L. Ed. 520; Legman v. United States (C. C. A. 3rd) 295 F. 474, 478.

■ We find that the warrant conforms to the Amendment in that it is supported by oath and discloses particularly the place to be searched, which in this instance was not an occupied dwelling but a warehouse, and describes generally the things to be seized, leaving open only the question of probable cause. As to this the affiants stated that they had good reason to believe, and did believe, that upon the premises named there were located and concealed intoxicating liquors and property for the manufacture of intoxicating liquors, which were being held and possessed for beverage purposes in violation of the Act; that the facts tending to establish probable cause of the affiants' belief were that when standing about seventy-five feet away they detected a strong odor of moonshine whisky emanating from the premises; that on the day before they had made a like detection; that during ten days' observation they saw motor cars with license plates of other states going to and from the place; and they saw in the building about one hundred 5-gallon cans of the kind bootleggers use for conveying moonshine whisky.

Whether these facts so averred and sworn to constitute probable cause on which to predicate a valid search warrant cannot be tested by any fixed rule of law but can be determined by finding that they are such as to warrant a man of sense, prudence and caution in believing that an offense against the law is being committed. Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Dumbra v. United States, 268 U. S. 435, 45 S. Ct. 546, 69 L. Ed. 1032. When an odor of liquor emanates from a warehouse—not a bonded warehouse and not one operating under a permit—and when it emanates on a second occasion, it is not unreasonable for one, charged with a duty, to use and in a measure rely upon his sense of smell as in other cases he may rely upon his sense of sight or taste. McBride v. United States (C. C. A.) 284 F. 416; Id. 261 U. S. 614, 43 S. Ct. 359, 67 L. Ed. 827; Lee Kwong Nom v. United States (C. C. A.) 20 F.(2d) 470; especially in connection with the other circumstances of incoming and outgoing motor vehicles from distant states and the presence of cans of the kind known to be used in unlawful liquor traffic. We hold that the affidavit on which the search warrant is-

sued stated facts which established the constitutional essential of probable cause.

The third and most serious question raised on this appeal relates to the property seized under the search warrant and forfeited under the libel. The truth, established by the search, is that these respondents kept what might be called a bootleggers' outfitting establishment, that is, an establishment to equip bootleggers with every article they would need in plying their unlawful trade. The prohibition agents, acting under the search warrant, seized about every movable thing in sight. Aside from what has been returned to the respondents and what should be returned to them, we are here concerned only with the property the government seized and specifically named in its libel as liquor and property held and possessed for unlawful use. This includes liquor found in several partly filled cans and jugs, more than a hundred empty 5-gallon cans, several thousand empty bottles of different shapes, many with labels already on them and packed in cartons ready for delivery, several thousand cardboard cartons of different kinds, several hundred demijohns, several hundred bags and boxes of corks, sealing wire, wrappers for whisky bottles, twine, caps for bottles, crimping machines, labeling machines, siphons and filters, a large number of assorted labels, cans of glyco, flavoring nuts, glycerin, gin extract, syrup, and (aside from other articles too numerous to mention) finally, 402 whisky barrels all containing whisky chips and more than half containing a small quantity of whisky. Whisky chips are shavings from the interior of whisky barrels and, having absorbed whisky, are used in the manufacture of bootlegger liquor. Moreover, the barrels, not having been treated to prevent the extraction of their liquor content, could be washed out with water and would on many washings through many years still yield a product which, though doubtfully called whisky and having an alcoholic content well above that limited by law, is fit for beverage purposes,—so it was testified. In addition to these articles the search disclosed approximately 18,000 forged strip stamps—cap sealing stamps—in the respondents' possession bearing the names of different distillers, some American and some Canadian.

This was not a heterogeneous stock in trade open to casual purchasers desiring bottles, corks, barrels, syrup and other wares for personal or commercial purposes. The stock was so selected, kept and arranged as to make separate and distinct liquor set-ups. For instance, if a person should want to outfit an illicit gin plant he could buy from the respondents everything necessary to that business except, perhaps, the basic alcohol in large volume. He could buy gin extract and flavoring, gin bottles, labels, strip stamps, sealing wire, corks, caps and cartons. If another person, about to engage in the illicit manufacture and sale of Scotch whisky, should desire an outfit for liquor of that kind, he could get it in every detail except, perhaps, the basic alcohol in large quantities. And so a rye whisky outfit, in which would be included whisky barrels, whisky chips and whisky dregs, which, besides supplying a small quantity of alcohol, impart the flavor of rye whisky to the concoction. These outfits or set-ups were so complete that they even simulated popular pre-war brands both in shape of bottles and dress, such as "William Penn," "Golden Wedding," "Gordon Gin," "Gibson."

The respondents were without doubt bootlegger outfitters. While, admittedly, some of the articles seized and forfeited were susceptible of direct use in the physical and chemical manufacture of intoxicating liquor and might readily be determined by the court to be designed for that use, United States v. 18 Barrels of Alcohol (D. C.) 20 F.(2d) 186, 187, the serious question is whether other articles capable of innocent use generally and capable of use by a bootlegger only after the liquor had been actually made, constitute "property", under section 25, title 2, of the National Prohibition Act (27 USCA § 39), "*designed* for the manufacture of liquor intended for use in violating this title or which has been so used", for it is only property of that kind which can under the cited provision be forfeited.

Of course the respondents concede that liquor constituents as well as vats, stills and instrumentalities used or intended to be used in the actual manufacture of fluid liquor constitute property designed for such manufacture and fall within the Act, but they insistently contend that after the fluid liquor has been manufactured all other property used in connection with it, even the containers in which it is stored or carried away, do not constitute property falling within the Act.

Whether their position is right depends upon the meaning of the quoted provision, which in turn must be sought and

determined by the usual canons of statutory construction. Of these the first, and in this instance the most important, is that in construing an Act of Congress the known policy of Congress in regard to the subject matter must be considered. Richardson v. Harman, 222 U. S. 96, 32 S. Ct. 27, 56 L. Ed. 110. The subject matter is the inhibition declared in the Eighteenth Amendment to the Constitution against the "manufacture, sale, or transportation of intoxicating liquors * * * for beverage purposes." The policy of Congress in regard to this subject matter, as revealed by the National Prohibition Act, is to enforce it and make it practically effective. All the provisions of the Act are directed to stopping the use of intoxicating liquor as a beverage and to ways and means of achieving that end. Clearly, this was the purpose of Congress in enacting the national prohibition law and in embodying in it the provision under review. Other canons require that the provision should not be construed so strictly as to defeat the manifest intention of Congress, United States v. Lacher, 134 U. S. 624, 628, 629, 10 S. Ct. 625, 33 L. Ed. 1080, but that it should be construed sensibly yet always with a view to the object aimed at. Gibson v. Jenney, 15 Mass. 205. In the search for the legislative intention, which after all is the central and controlling consideration in every such problem, a court should look for and find, when possible, the problem which Congress had in mind, Rodenbough v. United States (C. C. A. 3d) 25 F. (2d) 13, 57 A. L. R. 1091, consider the conditions with reference to the subject matter that existed at the time of the enactment, Holy Trinity Church v. United States, 143 U. S. 457, 12 S. Ct. 511, 36 S. Ct. 226; Northern Pacific R. Co. v. United States (C. C. A.) 213 F. 162, L. R. A. 1917A, 1198, and the causes that induced the enactment, including the policy of the government, Wisconsin Central Railroad Co. v. United States, 164 U. S. 190, 17 S. Ct. 45, 41 L. Ed. 399, and sometimes look into the history of the subject. Denn v. Reid, 10 Pet. 524, 9 L. Ed. 519; Stewart v. Kahn, 11 Wall. 493, 20 L. Ed. 176; Preston v. Browder, 1 Wheat. 115, 4 L. Ed. 50.

Both the constitutional and legislative enactments are in their substance and history matters of such common knowledge that they do not call for recital or discussion beyond quoting another provision of the Act which aptly shows the intention of Congress with reference to the provision under review. By section 18 of title 2 (27 USCA § 30) the Congress declared that:

"It shall be unlawful to advertise, manufacture, sell, or possess for sale any utensil, contrivance, machine, preparation, compound, tablet, substance, formula, direction, or recipe advertised, designed, or intended for use in the unlawful manufacture of intoxicating liquor."

By these provisions (sections 18, 25, title 2) Congress made clear its intention to stop all unlawful manufacture of liquor by shutting off the instrumentalities by which it can be made. But the purpose of Congress was not merely to prevent the unlawful manufacture of liquor and stop there, but, when unlawfully manufactured, to prevent its flow into illicit trade; and this, not only under conditions as they existed at the time of the enactment but in the future as well, according as there might develop new conditions or artifices to be met and overcome. The rule of statutory construction in this regard is that legislative enactments in general and comprehensive terms, prospective in operation, apply alike to all persons, subjects and business within their general purview including those that come into existence subsequent to their passage, 25 R. C. L. 778, thus admitting adjustment of the legislative intention when broadly expressed to new conditions.

It is plain that bottles, corks, sealing wire, or great quantities of these articles, do not, standing alone, constitute property designed to be used in the manufacture of liquor. Ordinarily they are lawful articles of commerce not affected by the National Prohibition Act. But when, not standing alone, they are assembled and put on sale with clearly forbidden property they take on a new character and themselves become contraband because intimately associated with unlawful manufacture and inseparably connected with the sale of the unlawfully manufactured product.

The provision here in question is broad enough to cover instrumentalities used or designed for use after liquor has been chemically and actually made, for Congress, like everyone else, knew perfectly well that no one would manufacture liquor without intending to make a profit on it and that no one (not operating under a permit) could make a profit on it unless he sold it unlawfully, and indeed unless he put it in shape and dressed it for sale. It is also clear that no one can handle, transport or sell liquor without instrumentalities connected there-

34

with, such as containers, glass or wooden; corks, caps or bungs to prevent outflow; cartons to prevent breakage of glass containers; labels to denote contents truly, which we assume is never done, or falsely, as was intended in this case; strip stamps, necessarily forged, to denote origin and authority to sell. Without these indicia of intention as to the use of manufactured liquor in violating the law it would be difficult and in many instances impossible to determine when possession of property designed for the manufacture of liquor is unlawful. Mere "possession of property designed for the manufacture of liquor" is not forbidden by section 25, title 2, of the Act (27 USCA § 39); the inhibition goes to property so designed when the liquor manufactured or to be manufactured by it is "intended for use in violating" the Act, sale of the liquor being the most common "use." This intention to violate the Act by the use of liquor manufactured by property designed for that purpose is an inseparable part of the forbidden thing, and if the intention is to be inferred from the shape and dress of the liquor so unlawfully made, the things that reveal the intention to sell constitute, in our judgment, property going into its forbidden manufacture with the intention to violate the law.

We are of opinion and therefore hold that under applicable rules of construction the properties seized and ordered forfeited and destroyed came within the purview and scope of the provision under review as Congress declared in widely legislating to carry out the purpose of the Eighteenth Amendment.

The decree of the District Court is affirmed.