## STROUD v. UNITED STATES.

### No. 13774.

United States Court of Appeals
Fifth Circuit.

Nov. 7, 1952.

M. Neil Andrews and J. F. Kemp, Atlanta, Ga., for appellant.

Lamar N. Smith, Asst. U. S. Atty., J. Ellis Mundy, U. S. Atty., Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES, and RUSSELL, Circuit Judges.

2. See Anderson v. U. S., supra; Busic v. United States, 4 Cir., 149 F.2d 794; United States v. One Reo Truck, D.C., 25 F.Supp. 213.

RUSSELL, Circuit Judge.

On January 19, 1951, officers of the Alcohol Tax Unit seized two trucks engaged in transporting cargoes of sugar, barley malt, and rye meal on Highway 78 a few miles west of Douglasville, Georgia. A libel of information was filed against the trucks and their contents under Sections 3116 and 3321, Title 26 U.S.C., alleging that the intended use of the materials was the production of distilled spirits in violation of the laws of the United States. Cecil O. Stroud appeared and filed a claim affidavit asserting title to the property and denying that it was guilty. The jury found the trucks and other property guilty and a judgment of condemnation was entered.

At the time of the seizure, Stroud, accompanied by Grady Reece, his brother-in-law, was driving one of the trucks, a 1950 model Ford pick-up, and was following "a couple of hundred" yards behind the other truck, a 1947 International, which was being driven by his step-son. The International truck was purchased by Stroud on January 30, 1950. The license tag on the truck when it was seized, Number A/D 23581, according to the records of the Georgia Department of Revenue, was issued upon the application of Frank E. Watson, Eatonton, Georgia, dated March 31, 1950. These records also indicated that an application for a duplicate license tag for this truck was filed on April 24, 1950, and a tag, Number A/D 31804, was issued. Returns to Alcohol Tax Unit, Internal Revenue Service, under Regulation 17, filed by Curran Brothers and Star Feed & Grocery Company, Atlanta, Georgia, disclosed that during the period from April 8, 1950 to August 21, 1950, certain quantities of sugar, malt, rye meal, and yeast were delivered to Roy Jones and Frank E. Watson,

license tag Number A/D 23581, and that during the period from May 12, 1950 to May 17, 1950, certain quantities of sugar, malt and rye meal were delivered to Roy Jones, license tag Number A/D 31804.

The Ford pick-up truck, at the time it was seized, had attached to it a 1950 Georgia Dealer's license tag Number 379. Cecil O. Stroud purchased a pick-up truck from Wildcat Motors on November 11, 1950. At the time it had attached to it the 1950 Georgia Dealer's license tag. He promised to return the tag to the dealer, but he never did so.

In May, 1950, one of the witnesses saw the International truck loaded with 50 cases of half-gallon fruit jars and 150 one-gallon cans in onion sacks. Such containers are customarily used by "moonshiners" for non-tax-paid distilled spirits, although they are used for various other purposes. On January 15, 1951, Cecil Stroud and Grady Reece were seen moving some half-gallon fruit jars containing non-tax-paid whiskey from a hog pen located near Stroud's mother's house and placing them in a barn and under the house. Stroud was also arrested by the Sheriff of Douglas County, Georgia, at a distillery in 1949.

At the time of his apprehension, Stroud had in his possession certain invoices and receipts concerning various supplies and equipment. There was testimony that these supplies and equipment and the materials contained in the trucks at the time of the seizure could be used in the manufacture of distilled spirits. They would also be useful for other purposes.

Shortly after the trucks were seized, Stroud made a written statement to one of the investigators. This statement, set forth in the margin,[1] was offered in evidence by the Government.

1. "On January 19, 1951, I was arrested by Federal Officers, Roy Shields, Jesse W. Thrasher, A. J. Ruston and Glenn J. Wimbish, on Highway 78 several miles west of Douglasville, Georgia. At the time of my arrest I was driving a 1950 Model Ford Pick-Up Truck containing six one hundred pound sacks of Barley Malt Feed, and three one hundred pound sacks of Rye meal. In the car with me was Grady Reese, who is my brother-in-law. The truck I was driving belonged to me. It is free and clear. I owed nothing on it. I have had this truck about thirty days. Directly in front of me was another truck, a 1947 International 1½ ton, this truck belongs to me also, it was being driven by Leon Grogan, who is my step-son. The truck that Leon was driving contained 5900 pounds of sugar.

"I bought the sugar and meal and malt from Tommie Thompson in Atlanta. I

■ Appellant complains of the admission in evidence of testimony and documentary evidence which he contends was incompetent because it related to separate, distinct and unrelated transactions and tended to prove offenses other than the offense charged. This evidence was properly admitted as bearing upon a vital question in the case,—the motive and intent of appellant. Williams v. United States, 5 Cir., 199 F.2d 921.

■ The evidence related amply supports the verdict. It is suggested, however, that the Government, having introduced in evidence the statement made by the appellant to the officers, in which he stated that he was delivering the materials to certain grocery companies for resale, is bound by such statement and concluded from denying its veracity. The statement of appellant is not entirely exculpatory, but contains many admissions against his interest. By his statement, he admits that the trucks were being operated under his direction and control, and that he had purchased sugar from Curran Brothers on previous occasions. He also stated that he had owned the International Truck for about a year and that no one had ever used it to haul sugar except him. These admissions and

appellant's failure to testify leave unexplained the purchase of two license tags for the truck under the name of Frank E. Watson after appellant acquired title to it, and the delivery of sugar and other materials to vehicles bearing these tags and under the names of Roy Jones and Frank E. Watson.

■ Where the statement of a party containing recitals partly in his favor and partly against him is introduced by his adversary in a civil case, the party introducing such statement is not concluded by the self-serving portions of the statement, nor estopped to contradict them.[2] It does not follow that every part of such a statement must be credited, or that the jury is bound to give equal credit to all parts of it.[3]

Whether the materials here involved were intended to be used in violation of the Internal Revenue Laws is a question of fact. In determining it, the jury was entitled to consider all of the facts and circumstances presented and to draw all proper and logical inferences therefrom. The verdict finding guilty intent is supported by the evidence and the judgment of condemnation is not erroneous.

Judgment affirmed.

was hauling this sugar to Howell Grocery Company, Oak Level, Ala. The meal and malt was going to Dryden Grocery Company, Tallapoosa, Ala. I received the order for the sugar, meal and malt from Mr. Lee Howell this date about 7:00 A. M. when he came to my house. I was still in bed when he got there. Mr. Howell was driving a Ford car. Mr. Howell said he wanted a hundred sacks, but I told him I would have to make two trips on account of my tires.

"I have been hauling sugar to Mr. Howell for about a year. I have averaged hauling him at least one load a month, about 50 bags each trip. Some of this sugar was purchased from Tommie Thompson, some from Curran Brothers and J. J. Peterson. My profit for hauling the sugar was an average of $1.50 to $2.00 per sack. No one has ever used the International but me when sugar was hauled on it.

"I was going to give Leon Grogan $5.00 to drive the truck for me. Reese and Grogan had no interest in either the trucks or the sugar or meal or malt. I bought the International Truck from the International Truck Co., Whitehall Street, Atlanta, about a year ago. The bill of sale was made out in my name. I bought the pick-up truck from the Wild-Cat Motor Co., Austell, Ga."

2. Christian v. Macon Railway & Light Co., 120 Ga. 314, 317, 47 S.E. 923.

3. Nitro Powder Co. v. Kearns, 50 Colo. 1, 114 P. 396; Heyman v. Hanauer, 302 Pa. 56, 152 A. 910; Nelson v. Rural Educational Ass'n, 23 Tenn.App. 409, 134 S. W.2d 181, 190; West v. Southern Ry. Co., 20 Tenn.App. 491, 100 S.W.2d 1004; Williams v. Excavating & Foundation Co., 230 Mo.App. 973, 93 S.W.2d 123.