UNITED STATES of America,
Appellant,

v.

2265 ONE–GALLON PARAFFINED TIN
CANS, etc., William C. Cumby,
Claimant, Appellee.

No. 17193.

United States Court of Appeals
Fifth Circuit.

Oct. 24, 1958.

James W. Dorsey, U. S. Atty., J. Robert Sparks, Asst. U. S. Atty., Atlanta, Ga., William P. Crewe, Sp. Asst. to Regional Counsel I. R. S., Atlanta, Ga., for appellant.

Donald B. Howe, Harold L. Murphy, Buchanan, Ga., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

Alleging that personal property consisting of various items had, possessed and intended for use by one William C. Cumby, in violation of the laws of the United States, to-wit, Secs. 5686(b) and 7302 of I.R.C., 1954, 26 U.S.C.A. Secs. 5686(b) and 7302, in that the said property consisted of raw materials used in the manufacture of distilled spirits

had become forfeit and had been seized, the United States filed a libel of information seeking its condemnation.

Cumby, appearing as claimant of the property, sought its release from seizure and return to him upon allegations: that it was not intended to be used by him for the manufacture of distilled spirits or any other illegal use; that it consisted of hardware, building and plumbing supplies; that it was owned and possessed by him as a merchant for sale, both at retail and at wholesale; that it was, therefore, not forfeit to the United States; and that it had been illegally seized.

Thereafter, on the issues thus joined, the cause was fully heard and at the conclusion of the lengthy trial, in which it was established that while Cumby did not intend himself to use and did not use any of the articles in the illegal manufacture of liquor, he catered to that illegal trade and did make many, indeed the greater part, of his sales to persons so engaged, knowing that the articles were bought for and intended to be put to such use.

The evidence in, the district judge filed full findings of fact [1] and conclusions of law. The material elements of these are: that the burden rests upon the government to establish the material allegations of the libel, citing Anderson v. United States, 5 Cir., 185 F. 2d 343, 344; that the intention to use

---

1. The general purport of these were that for many years prior to June 13, 1957, not always in the same location, Cumby was a dealer in metals and other merchandise. ·On that day and for some time prior thereto he owned and operated a store or warehouse adjacent to his dwelling located on a dirt road off the main highway between Tallapoosa, Georgia, and the Georgia-Alabama state line. The business bore no sign or name of the business, and the type of business conducted therein could not be determined by persons passing along the road or highway.

All of the goods handled by him were capable of use in legitimate trade or business and were also capable of use in the production and manufacture of illicit whiskey. As to many of the items of stock, though capable of being used in such connection, their common use was for the legitimate trade in building, plumbing and heating.

On May 23, two criminal investigators for Internal Revenue Service, posing as persons who wished to become engaged in the manufacture of illicit whiskey visited Cumby's premises, were advised by him as to the proper articles from his stock to be used and how best to use them in the making of illicit whiskey, and were sold some of these articles.

Claimant's place of business was patronized by persons having either a record or reputation for violating the Internal Revenue laws with respect to nontax paid liquor, and the place of business was also patronized by customers who did not have such a reputation and were contractors or builders, who bought and used the metals or plumbing and heating supplies sold by Cumby. It is uncontroverted in the record that Cumby had many such customers.

Cumby did, however, intend to, and did, sell materials and merchandise from his stock to any person who wished to purchase same, even though he knew and believed, or had cause to know and believe that such purchasers themselves intended to use the materials so purchased for the production of illicit nontax paid liquor.

The goods handled by Cumby were in general those required and demanded by persons engaged in manufacturing illicit liquor and that trade. He knew that many of his customers were reputedly engaged in the illicit liquor business and that the goods he sold to them would in all probability be put to that use. However, he did not himself intend to put the goods to such use, nor was he in any way to share in the profits or have any stake in the venture of the purchasers.

All of the property seized by the federal officers was property located in the store or warehouse or on its shelves, and was material and merchandise held by Cumby for resale. If the goods so seized had been left in the hands of Cumby for sale and if the sales had taken place in the normal course of Cumby's business, a large part of said materials would have been sold to customers who had a reputation for dealing in nontax paid liquor and who in all probability intended to use such materials in the production thereof.

Based on these findings of fact, the district judge purported to find as a fact that the property was not guilty.

or cause the use of the seized property, in violation of the provisions of the Internal Revenue laws or regulations, must have been the intent of the claimant; that the intent to so use the property cannot be that of the person to whom the property was sold, citing Stroud v. United States, 5 Cir., 199 F.2d 923; that Cumby possessed the goods here involved for the purpose of sale only; that he did not intend to use them himself or cause them to be used in violation of the law; and, though he knew that the persons to whom he was to sell a portion of the goods had the reputation of being moonshiners and he knew that they would use the goods in the manufacture of liquor, since he did not promote the venture himself, make it his own, or have any stake in its outcome, the property is not guilty.

Appealing from the judgment, dismissing the libel and ordering the return of the goods to the claimant, the United States, not challenging any of the findings of fact as fact but the conclusion drawn from them, that the property was not guilty, and, therefore, was not forfeit, is here urging upon us that the court has completely misapprehended and misapplied the law.

The appellee, on his part, relying upon the opinion of the district judge and the cases he cites, insists that the judgment should be affirmed.

■ We do not think so. On the contrary, for the reasons hereafter briefly stated, we agree with the United States that the judgment must be reversed.

The district judge erred, under the undisputed facts, in concluding that goods owned, as these goods were by Cumby, a person who had the intent to sell them to persons desiring to make illegal liquor, were not, because of such intent, made forfeit. In so concluding, the district judge, with deference, we think, relied upon decisions dealing with criminal prosecution of an offender rather than upon those dealing with forfeitures of property. In such cases, where the property is being used in actual violation of law or, where it is not, is being held with the intent to make the goods available to those who will deal illicitly with it, the forfeiture statutes in question are satisfied. The statutes invoked here specifically state that the goods are forfeitable if they are being held with intent to use them illegally, and many cases hold that circumstances of the kind established here furnish the statutory intent requisite to forfeiture and seizure.[2] It does not follow from this conclusion, however, that we agree with the United States that all of the chattels seized are forfeit and should be condemned.

■■ In this kind of quasi deodand, where the goods are forfeit not because of their actual illegal use but because of the fact that the possessor holds them with the intention to illegally use them and the forfeiture claimed is not of fungibles but of chattels, each having a separate identity, there is in law no such commingling of the whole as that the proof of illegal intention as to part of the goods taints others as to which no such intention is shown. Upon the evidence in this case, showing without dispute not only that the whole stock could be sold and used for legitimate purposes but that a considerable portion of it was so sold and used, it cannot, we think, be held that the mere proof of an intention to sell some of the chattels for illegal purposes could be imputed to others of the chattels as to which the clear intention to so sell and use them is not shown.

---

2. Snead v. United States, 4 Cir., 217 F.2d 912; Stroud v. United States, 5 Cir., 199 F.2d 923; United States v. 3935 Cases of Distilled Spirits, D.C., 55 F. Supp. 84; De Hart v. United States, 4 Cir., 237 F.2d 227; United States v. One Lot of Intoxicating Liquor, D.C., 27 F.2d 903; Kent v. United States, 5 Cir., 157 F.2d 1; Feitler v. United States, 3 Cir., 34 F.2d 30; Danovitz v. United States, 281 U.S. 389, 50 S.Ct. 344, 74 L.Ed. 923; Weinstein v. United States, 1 Cir., 293 F. 388.

On the other hand, as is made plain in the decisions cited in Note 2, it certainly cannot be said that because some of the chattels were held for sale and were sold for legal uses, all of them escape forfeiture. The following brief quotations from some of these cases point the way clearly we think to the correct decision of this case:

"It is argued that Snead may have had the yeast and malt for sale to others in ordinary course of trade. It is a sufficient answer that he offered no evidence to that effect and that he was engaged in no legitimate business which would account for their possession." Snead v. United States, 4 Cir., 217 F.2d 912, 914.

"It would, of course, be no defense that he intended to sell it to illicit distillers instead of to use it himself in illicit distilling, Backun v. United States, 4 Cir., 112 F.2d 635, 637; and the circumstances clearly indicate that he knew that it was intended for this unlawful use. To hold otherwise would be to close our eyes to facts which are susceptible of no other reasonable explanation and to stultify the administration of justice in the view of all right thinking men." De Hart v. United States, 4 Cir., 237 F.2d 227, 228.

"The third and most serious question raised on this appeal relates to the property seized under the search warrant and forfeited under the libel. The truth, established by the search, is that these respondents kept what might be called a bootleggers' outfitting establishment, that is, an establishment to equip bootleggers with every article they would need in plying their unlawful trade. * * *

* * * * * *

"It is plain that bottles, corks, sealing wire, or great quantities of these articles, do not, standing alone, constitute property designed to be used in the manufacture of liquor. Ordinarily they are lawful articles of commerce not affected by the National Prohibition Act. But when, not standing alone, they are assembled and put on sale with clearly forbidden property they take on a new character and themselves become contraband because intimately associated with unlawful manufacture and inseparably connected with the sale of the unlawfully manufactured product." Feitler v. United States, 3 Cir., 34 F.2d 30, 32.

In affirming this case, 281 U.S. 389, the Supreme Court said in part at page 396, 50 S.Ct. 344, at page 345:

"The argument for the petitioner, so far as it does not go beyond the limits set in granting the writ of certiorari, is that empty containers, bottles and the other apparatus described, cannot be used in or designed for the manufacture of liquor, because the manufacture is completed before that apparatus comes into play. * * *

"The argument for the petitioner cannot be helped by amplification. It is obviously correct if the word 'manufacture' be taken in the strictest and most exact sense. But the word may be used in a looser way to express the whole process by which an article is made ready for sale on the open market. * * * We are of the opinion that the word was used in this looser way, and that if the empty containers and the other objects seized were offered for sale in such a mode as purposely to attract purchasers who wanted them for the unlawful manufacture, as we interpret the word, they were designed for that manufacture and could be seized."

In Weinstein v. United States, 293 F. 388, 389, the Court of Appeals for the First Circuit held:

"*We think the intention referred to in the statute* (section 18) *is that of the* seller alone. It is his act which is made lawful or unlaw-

ful, depending upon his intention in regard to the use to be made of the article sold, provided the article is designed to carry out that purpose. The Prohibition Act (Title 2, § 3) makes the manufacture of intoxicating liquor for beverage purposes, or for nonbeverage and sacramental purposes without a permit, unlawful. And the *evidence was that the three-gallon still sold by the defendants was not only designed for use in the manufacture of intoxicating liquors, but that it was the intention of the seller that it should be used in the manufacture of such liquor for beverage purposes."* (Emphasis supplied.)

While in United States v. One Lot of Intoxicating Liquor, D.C., 27 F.2d 903, 904, this was said:

"There was no article in the store which could not be used to manufacture or prepare intoxicating liquor, while, of course, all of the articles, except the whiskey, could have been used for something else.

\* \* \* \* \* \*

"It remains only to inquire if the government has proved the charges of its libel. *To hold that it has not would be to turn one's face from the light, and blind one's eyes to the truth.*

*"In addition to the speaking character of the goods themselves, constituting no part of an ordinary store equipment, there was the affirmative testimony of the prohibition officers as to their conversation with the person in charge of the store, together with the lack of explanation by the claimant of the purpose and character of the store and its contents, the burden to furnish which the evidence in this case certainly casts upon claimant.*

"Let the government have its decree of forfeiture."

The judgment is reversed and the cause is remanded for further proceedings not inconsistent herewith.