**UNITED STATES of America,**

v.

**1,922 ASSORTED FIREARMS AND 229,-553 ROUNDS OF ASSORTED AMMUNITION, One Sawed-Off Shotgun,**

and

**Markwort Sporting Goods Company, a Corporation (Intervenor on 12/1/69),**

and

**Arist Curtis Orphant (Intervenor on 12/9/69).**

**No. 69 C 376(2).**

United States District Court,
E. D. Missouri, E. D.

May 27, 1971.

---

Daniel Bartlett, Jr., U. S. Atty., Robert B. Schneider, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.

Edwin Grossman, St. Louis, Mo., for intervenor Markwort Sporting Goods Co.

Karl F. Lang, St. Louis, Mo., for intervenor, Arist Curtis Orphant.

## MEMORANDUM OPINION AND ORDER

REGAN, District Judge.

██ By this proceeding, the United States seeks to forfeit the entire stock of firearms and ammunition in the possession of Arist C. Orphant, a licensed firearms dealer doing business as AAA Sporting Goods in St. Louis, Missouri. The guns and ammunition had theretofore been seized from Orphant's business premises on September 5, 1969, by agents of the Alcohol, Tobacco and Firearms Division of the Internal Revenue Service acting under the authority of a search warrant issued by the Commissioner. The seized firearms consist of new and used rifles, shotguns and pistols and the seized ammunition consists of rifle, shotgun and pistol ammunition. Orphant and Markwort Sporting Goods Company filed separate claims and answers. Markwort has made claim to various firearms and ammunition it had sold to Orphant on credit, title to which Orphant retransferred to Markwort after the seizure. Orphant claims the remaining items seized.[1]

Forfeiture is sought under authority of Section 924(d), Title 18 U.S.C., which provides that "(a)ny firearm or ammunition involved in or used or intended to be used in, any violation of the provisions of this chapter or any rule or regulation promulgated thereunder * * * shall be subject to seizure and forfeiture." The complaint on which the proceeding was tried alleges that the property seized (1) was possessed by Or-phant, a licensed firearms dealer, after its use, or (2) was possessed by him and intended to be used, in violation of Sections 922(b) (3), 922(b) (5), and 923(g) of Title 18 U.S.C. and 26 CFR 178.124 and 26 CFR 178.125. After the trial of the case was virtually completed, the Government requested leave to amend the complaint, including the addition of Sections 922(b) (2) and 922(m) to the list of statutory provisions in violation of which the property was allegedly used or intended to be used. The request to amend was taken with the case. Leave to file the amended complaint is hereby granted.

██ In a forfeiture case such as this, the burden is upon the Government to prove the essential facts which work a forfeiture. One 1961 Lincoln Continental Sedan v. United States, 8 Cir., 360 F.2d 467. However, the proceeding being civil in nature, this burden is satisfied if the facts justifying forfeiture are established by a preponderance of the credible evidence. United States v. One Assortment of 12 Rifles & 21 Handguns, D.C. Fla., 313 F.Supp. 641.

Neither in the complaint nor in the amendment does the Government allege that any of the seized firearms or ammunition were "involved in" any violation of the Gun Control Act or any other federal statute. The Government alleges only that the seized property in the possession of Orphant was either used or intended to be used in violation of specific sections of the Gun Control Act and regulations promulgated thereunder. There is not the slightest evidence that any of the 1,922 firearms or the 229,553 rounds of ammunition sought to be forfeited had ever been used by Orphant or anyone else in violation of law. The Government argues, however, that Orphant, the owner and possessor of the firearms and ammunition at the time of the seizure, "intended" to use them in violation of law.

---

1. No claim has been filed to a 20-guage Remington shotgun with a barrel length of 14¾ inches, bearing serial number 61253. It is not registered to anyone in records kept pursuant to Section 5841, 26 U.S.C. It should be forfeited to the United States under Section 5872(a), 26 U.S.C.

■■ There can be no question but that Orphant operated a legitimate sporting goods business in which, as a licensed dealer, he had the legal right to sell firearms and ammunition lawfully to persons entitled to purchase same. The Government now suggests that Orphant's license is void ab initio because of his failure to disclose that Lee Heirman, a clerk in his store, designated a "responsible person" in his application for the license, had theretofore been convicted of a felony. We do not believe this contention is available to the Government. The Complaint specifically alleges that Orphant was licensed as a firearms dealer and the case was tried (and should be disposed of) on that theory. In our judgment, although Heirman lived in an apartment above Orphant's store, had a key to the store premises, and was in charge of the store in Orphant's absence, in the sense he was authorized to make sales, he was not a "responsible person," as that term is defined in the license application.[2] Orphant was simply mistaken in so designating him. To the extent, however, Heirman may be deemed a "responsible person," we find that Orphant had no knowledge of his convict status until after the property sought to be forfeited was seized.

In late March, 1969, Clark Young, a special investigator of the Alcohol, Tobacco and Firearms Division of the Internal Revenue Service, accompanied by special investigator James Young (not related), sought to purchase a handgun and ammunition from Heirman in Orphant's store and in his presence. Heirman requested identification from Clark Young and when none was produced he refused to make the sale which would have been in violation of the Gun Control Act.

Several months later, on July 23, 1969, a Robert Dodson (otherwise unidentified) accompanied James Young to Heirman's apartment, Orphant's store then being closed, for the purpose of enabling Young to purchase rifle ammunition. It appears that Heirman knew Dodson and that Dodson introduced James Young to Heirman as "Jim" (no last name) and vouched for him. Thereupon, Heirman opened the store and obtained 120 rounds of ammunition which he sold to Young. Two days later, again after the store was closed, Young returned to Heirman's apartment where he purchased a revolver. On neither occasion was Orphant present and there is no credible evidence that he was aware of or that he received any of the proceeds of the sales.

Approximately a month later, in the early evening of August 21, 1969, Young returned to the Orphant store where Heirman introduced him to Orphant as a friend. At that time Heirman sold Young three 30–06 caliber military-type rifles. Orphant allowed Heirman to grant Young a discount of $13.85 on the purchase of the three guns. During the transaction Orphant inquired of Heirman whether he was taking care of the necessary papers, to which Heirman replied in the affirmative and went behind the counter where he procured three blank Form 4473s[3] for the three rifles. Apparently, the forms were not completed, but there is no credible evidence that Orphant was personally aware thereof.

The following day, Young returned to Heirman's apartment after the store was closed and purchased from Heirman a Colt .45 revolver. Following this sale, Heirman opened the store in Orphant's absence and sold Young two British 303 rifles. There is no evidence that Heirman completed any Form 4473s for the

2. "Any person possessing directly or indirectly the power to direct or cause the direction of the management, policies, and buying and selling practices of the business insofar as such management, policies, and buying and selling practices pertain to firearms or ammunition * * *" We believe that Orphant alone had the power of *direction* of management, policies, and buying and selling practices.

3. This is the form required to be completed in connection with a firearms transaction.

rifle transaction. Four days later, Young purchased from Heirman at the store three rifles, two shotguns and a quantity of ammunition and at the same time returned for credit one of the British 303 rifles purchased on August 22. On August 28, 1969, another agent, Lee Arthur Dunlap, accompanied Young to Orphant's store where Dunlap unsuccessfully attempted to purchase a gun from Heirman without giving him the necessary legal identification entitling him to make the purchase. Although Orphant was present in the store and presumably heard the discussion, Dunlap asked only Heirman to make the sale, and it was Heirman who refused to sell him a gun. On September 3 Young again went to Heirman's apartment where he purchased two .45 caliber revolvers from Heirman. As on previous instances involving sales in Heirman's apartment Orphant was not present, and there is no credible evidence that he had any interest in the handguns sold by Heirman or the proceeds of their sale.

The final transaction occurred on September 5, 1969, immediately prior to the seizure, when Young purchased from Orphant six firearms and two boxes of ammunition. The total purchase price was $420, but on Young's representation that he had no more cash than $417, Orphant accepted that sum. When the agents arrived with the search warrant shortly thereafter, the sale of these firearms and transaction had not been recorded in Orphant's bound record books which he kept in the store. He testified that it was his impression, based on conversations with Heirman, that Young was a federal firearms dealer but he did not see the license or request any other identification from Young, and had no right to rely on Heirman's representations. Neither Dodson nor Heirman testified. Heirman was then under indictment for offenses in connection with sales involved in this proceeding, as was Orphant who waived his privilege and testified. In these circumstances, we are not informed as to the relationship of Dodson to Heirman or of what he may have said which

would have induced Heirman to make sales to Young which the Government's evidence shows he refused to make to others such as Clark Young and Lee Arthur Dunlap.

The basic position of the Government is that Orphant's entire stock of guns and ammunition should be forfeited because of sales he made to Young without completing the required records and because of errors, discrepancies and omissions in the records he maintained pursuant to the Gun Control Act and regulations promulgated thereunder.

It is true that the sales to Young were violative of Section 922(b) (5) which makes it unlawful for a licensed dealer to sell or deliver "any firearm or ammunition to any person unless the licensee notes in his records, required to be kept pursuant to section 923 * * * the name, age, and place of residence of such person." That the guns sold to Young were "involved in" a violation of the Act, and would be forfeited to the Government but for the fact that title was already vested in the Government by its purchase thereof, is not in dispute. Here, however, the issue is whether all other guns and ammunition in the dealer's possession should be forfeited on the theory that they were "intended for use" in violation of law.

The Government urges that even though Orphant may in the ultimate have disposed of his other guns and ammunition in a lawful manner had they not been seized, this does not preclude him from having the "willingness, and therefore the intent to dispose of the property in an unlawful manner." Accepting this premise we find as a fact that the Government has failed to sustain its burden of proof to establish such intent.

Of the three Government agents who attempted to induce Orphant to violate the law, only James Young succeeded, and he to a limited extent only. As noted, supra, in the latter part of March, 1969, Clark Young (who did not testify) failed to persuade either Heirman or Orphant to sell him a handgun or ammunition without the necessary identification.

James Young so testified. Again, on August 28, 1969, Lee Arthur Dunlap failed to induce Heirman in Orphant's presence to sell him a gun without producing legal identification. James Young so testified.[4]

James Young apparently wormed himself into Heirman's confidence in his successful efforts to purchase firearms and ammunition from Orphant on three occasions. In each instance, however, the tags were removed from the firearms by Heirman and (quoting Young's testimony) "he would also state that because he wanted to make the records straight and in the event he would fill out the 4473 form or else put it in the book." This testimony is consistent with an intent to comply with the law, particularly when considered with Young's further testimony that Orphant, even though waiting on another customer at the time, inquired of Heirman whether he was complying with the record requirements and was assured by Heirman that he was properly taking care of the matter. On this occasion and at least on one other, Heirman procured the necessary number of blank Form 4473s for use in complying with the Act.

The Government cites various portions of Young's testimony as indicative of a wrongful intent on the part of Orphant, but as trier of the fact and judge of the credibility of the witness, we are not compelled to accept the validity of Young's every statement or to draw the various inferences therefrom urged by the Government, and we decline to do so.

■ The other major basis of the Government's claim as originally filed is that Orphant's records were not adequately or properly maintained, in violation of Section 923(g) and implementing regulations. That there were errors, discrepancies and omissions in Orphant's records cannot be gainsaid. However, in our appraisal of the evidence as a whole we have concluded (based solely on the record before us) that these resulted from carelessness and negligence, and at times inadvertence, but were not the result of a wrongful intent to violate either the law or the regulations. Having so found as a fact, we need not determine whether a violation of the record-keeping requirements imposed upon dealers would result in a forfeiture of the dealer's entire stock of firearms and ammunition on the theory he had the intent to violate such requirements as to every item in his inventory. Cf. King v. United States, 5 Cir., 364 F.2d 235, 236.

■ The only other statutory provision cited in the original complaint is Section 922(b) (3). That section makes unlawful (with certain exceptions) the sale of a firearm to a person who the licensee knows or has reasonable cause to believe does not reside in the state where licensee's business is located. The evidence submitted in support of this allegation consists of (1) a Firearms Transaction Record which shows the sale of a rifle to a resident of Ohio (a transaction in which Orphant did not personally participate), and (2) a sale of a gun by Orphant on September 5, 1969 to Napoleon Green who resided in the State of Illinois, as well as Firearms Transaction Records of two earlier sales made by Heirman to other Illinois residents. None of the circumstances surrounding the sales to non-residents of Missouri are in evidence. We also note that sales to residents of states contiguous to that in which the licensee's business is located are excepted from the statutory prohibition under certain conditions which evidently were not fully met in this case. Although these few sales may well have been unlawful under the statute, we hold that whether considered alone or in conjunction with other violations shown by the evidence such sales do not justify our finding as a fact that Orphant's inventory of guns and ammunition was possessed by him with intent that it be used in violation of law.

4. "(W)e approached Lee Heirman, and also Mr. Orphant, but they told us they would not sell us one because we needed identification at that time."

■ By the amended complaint, the Government seeks to add Sections 922(b)(2) and 922(m) to the statutes allegedly intended to be violated. Section 922(b)(2) makes unlawful the sale of any firearm or ammunition by a licensed dealer to any person in any state where the sale to such person would be in violation of an applicable state law, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such state law. As to this additional ground, the Government takes the position that the September 5, 1969 sale by Orphant to Young of two Derringer pistols was violative of Sections 564.620 and 564.630 (a) [5] V.A.M.S., which relate to concealed weapons. Section 564.620 makes unlawful the sale by a dealer of a pistol unless the dealer keeps a full and complete record with respect thereto including the date of the purchaser's permit and the name of the Sheriff granting the same. Section 564.630(1) prohibits the purchase or sale of a pistol unless the buyer first obtains and delivers to the seller and the same be demanded by the seller 30 days after the issuance thereof a permit from the Sheriff of the County of his residence authorizing such person to acquire the weapon. Whether Young had such a permit or was even required to obtain one was not shown by the evidence. However, even if Orphant's sale to Young of the pistols could be considered a violation of these Missouri statutes, in our judgment such violation does not reasonably lead to the conclusion that Orphant either used or intended to use his entire stock of guns or ammunition in violation of Missouri law.

Section 922(m) makes it unlawful for a licensed dealer knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which is required to be kept pursuant to Section 923(g) or regulations promulgated thereunder. Our discussion supra and the factual conclusions we reached as related to Orphant's failure to keep adequate records under Section 923(g) sufficiently determines the merits of the application of this statute to the facts.

We do not mean to imply by anything we have said herein that a dealer's entire stock of goods may not be subject to forfeiture if the facts so warrant. By way of example, a gun store may be used as a front to outfit persons intending to violate the law. Cases such as Seib v. United States, 8 Cir., 150 F.2d 673, United States v. 673 Cases of Distilled Spirits and Wines, D.C.Minn., 74 F.Supp. 622, and United States v. 600 Bags of Southcoast Turbinado Brand Sugar, D.C.La., 225 F.Supp. 705, relied on by the Government, are clearly distinguishable on their facts.

In *Seib,* the claimant was found to be carrying on the business of a wholesaler without having paid the required special tax. The District Court having found as a fact, on the basis of the evidence, that the liquor in the possession of the claimant was intended to be used in violation of the internal revenue laws, the liquor in his possession in carrying on his business was held to be properly forfeited to the United States.

United States v. 673 Cases of Distilled Spirits and Wines, also involved a claim by one shown to have carried on the wholesale liquor business without having paid the special tax. In this case also, the District Court found as a fact that the claimant possessed the quantity of liquor with the intent to use it in violation of the internal revenue laws.

In United States v. 600 Bags of Southcoast Turbinado Brand Sugar, on the basis of evidence which disclosed that the claimant, whose primary business did not include dealing in sugar, obtained large quantities of sugar for resale to a stranger in a cash transaction, the sugar being intended for use in an illicit distillery, the District Court found as a fact that the claimant intended the sugar to be used in violation of the internal revenue laws.

5. We find no such statute, and assume Section 564.630(1) is meant.

The present case is also unlike that of United States v. 2265 One-Gallon Paraffined Tin Cans, 5 Cir., 260 F.2d 105, which held that where the claimant sold items suitable for the manufacture of illicit liquor to persons he knew would use such items for such illegal manufacture, such items were possessed with the intent to illegally use them.

A case in which all of the guns in the possession of the claimant were held properly forfeited involved a claimant not licensed as a dealer who displayed all of his guns for sale to prospective buyers. United States v. One Assortment of 12 Rifles & 21 Handguns, D.C.Fla., 313 F. Supp. 641. On the facts as found by the District Court it was held that the guns involved were in and intended to be used in violation of the Gun Control Act.

The foregoing cases make clear that the question of *intent*, as applied to the use to which the property is to be put is one of fact, and we have resolved that question in favor of claimants.

 In view of our finding adverse to the Government on the issue of intent, it is not necessary to reach the further question of whether an entire stock of goods may be forfeited where the evidence shows "not only that the whole stock could be sold and used for legitimate purposes but that a considerable portion was so sold and used." In dealing with that question, the Court in *Paraffined Tin Cans*, supra, held that where the forfeiture claimed is not of fungibles but of chattels, each having a separate identity, mere proof of an intention to sell some of the chattels for illegal purposes may not be imputed to others of the chattels as to which no clear intention to so sell and use them is shown. On that basis, the Court remanded the case for a determination as to which of the chattels were held with the intent to be used in violation of law.

On the basis of our foregoing findings and the failure of the Government to establish the facts necessary to a forfeiture by a preponderance of the credible evidence, we hold that none of the seized guns and ammunition claimed by Orphant and Markwort Sporting Goods Company were used or intended to be used in violation of any law or regulation and therefore are not subject to forfeiture. The claimants are entitled to a judgment in their favor ordering the return to them of the guns and ammunition claimed by them respectively. Only the 20-guage Remington shotgun referred to in footnote 1 should be forfeited.

The foregoing memorandum constitutes our findings of fact and conclusions of law.